66 So.2d 903

**WATSON v. BIRMINGHAM SOUTHERN R. CO. et al.**

**6 Div. 544.**

Supreme Court of Alabama.

Aug. 6, 1953.

Hare, Parsons, Wynn & Newell, Birmingham, for appellant.

Burr, McKamy, Moore & Tate and Andrew J. Thomas, Birmingham, for appellees.

MERRILL, Justice.

Plaintiff sued defendants for damages for injuries received when his automobile ran into a train at a public crossing. This appeal is from verdicts in favor of the defendants as a result of the giving of the affirmative charge requested by the defendants at the conclusion of the introduction of evidence.

Woodward Iron Company owned the railroad tracks, the roadbed and the signal devices, and Birmingham Southern Railroad Company operated the train involved in the accident.

Plaintiff alleged that the defendant Woodward Iron Company negligently failed to maintain at said crossing or its approaches any warning device reasonably adequate, at night, to give warning of the existence and location of said railroad crossing. It was alleged that the defendant Birmingham Southern Railroad Company negligently obstructed said public grade crossing with an unlighted freight car, well knowing the aforesaid dangerous conditions of visibility for motorists approaching said crossing at night.

The Globe Indemnity Company intervened in that said intervenor had paid compensation to the plaintiff under the Workmen's Compensation Act of Alabama and also furnished medical and hospital treatment.

On the first trial of the case, the trial court gave the general affirmative charge with hypothesis on behalf of the defendant Woodward Iron Company, and a judgment was entered in favor of said defendant. The jury was unable to agree on a verdict with reference to the defendant Birmingham Southern Railroad Company, and a mistrial was declared by the court.

On the second trial, upon the same pleading and evidence as on the first trial, the trial court gave the jury the general affirmative charge with hypothesis in favor of the defendant Birmingham Southern Railroad Company. Plaintiff filed a motion for a new trial, which was overruled. Plaintiff appealed and has three assign-

ments of error, one and two being that the court erred in directing a verdict in favor of the defendants, Birmingham Southern Railroad Company and Woodward Iron Company, respectively.

The accident, which is the basis of this suit, occurred about 9:15 at night on March 2, 1951. The weather was fair, the pavement dry, and there was no evidence of fog. The crossing was known as the Robertstown Grade Crossing, and is located between Brighton and Bessemer in open country.

The plaintiff was not familiar with the territory. He testified that as he approached the railroad crossing, after topping the crest of a rise in the road, he was traveling slightly downgrade at a rate of speed of forty to fifty miles an hour; that his lights were on and good so far as he knew; that his automobile was within fifty or sixty feet of the railroad crossing when the lights thereof picked up the undercarriage of a railroad car that was crossing the highway; that he immediately went for his brake and cut to the right, but he had slowed up very little before the collision occurred. The train was an eighteen car freight train, and plaintiff's car hit the front end of the seventeenth car, a gondola, and derailed it. Plaintiff received his injuries as a result of this collision.

There were two cross-arm signs at the railroad crossing when the accident occurred, one on the right and one on the left of the highway, each of which read "Railroad Crossing". The planks forming the sign on the west side of the highway were five feet long and ten inches wide with five-inch letters, and the center of said sign was ten and eight-tenths feet high. The cross-arm sign on the east side of the highway was four feet long and six inches wide with five-inch letters, and the center of that sign was nine feet and six inches high. The cross-arms were painted white with black letters.

The county highway engineer, a witness for the plaintiff, testified that north of the railroad track the highway was perfectly straight for nine hundred feet (plaintiff was traveling south); that the highest point of elevation in the highway was three hundred and fifty feet north of the railroad track, and he identified pictures of the highway and the crossing which were introduced by both plaintiff and defendants. He further testified that standing at the crest of the road three hundred and fifty feet north of the railroad track in the daytime he could see both railroad cross-arm signs which are shown in the photographs.

It was undisputed that the train was moving about ten miles per hour; that as it approached the crossing the horn was blown and the bell was ringing; that the windows of plaintiff's car were up and he heard no noise of any kind above that of his motor, and he neither saw nor heard anything that put him on notice that he was approaching the crossing until he was about fifty or sixty feet away from it.

■■ Appellant's opening statement in his brief says that the single question in this case is whether or not the facts bring it within the application of the decision of Callaway v. Adams, 252 Ala. 136, 40 So.2d 73. We are in agreement with that statement. The general rule is clearly stated in Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262, 263, as follows:

"This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care.

"So it is widely held that the negligence of the driver of the motorcar will be treated as the sole proximate cause of an injury resulting from

running into a standing railway car at a crossing, unless something intervenes calling for special precautions on the part of the railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar."

The rule of Callaway v. Adams, supra [252 Ala. 136, 40 So.2d 76], is expressed in the following language:

"The pertinent principle is well stated in St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 615, 114 So. 215, 217, 56 A.L.R. 1110:

" 'The rule sanctioned by the authorities * * * is that, in order to charge the railroad with negligence in such a case, it must be shown that defendant's employees in charge of the train, in the exercise of reasonable care, ought to know that on account of darkness the cars upon the crossing are such an obstruction that people traveling along the highway in automobiles properly equipped with lights and carefully operated at a reasonable rate of speed would be likely to come into collision with them; in other words, the employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them.'

"To the same effect are Southern R. Co. v. Lambert, supra; Domite v. Thompson, La.App., 9 So.2d 55; William A. Smith Const. Co., Inc., v. Brumley, 10 Cir., 88 F.2d 803; 44 Am. Jur. 741, § 501; 3 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 1794. * * *

"Here the circumstances bring the case within the exception. The facts adduced afford a proper inference that by reason of the topography and the grade and course of the highway and the overhanging tree limbs obstructing the signal light from view, the presence of the train could not, by the exercise of reasonable care, be discovered until immediately upon it, thus disclosing an environment producing such special circumstances or conditions of hazard as made it a jury question as to whether or not it was incumbent upon the employees of the railroad company to give the plaintiff—a stranger to the situation—some additional warning of the presence of the train."

In the same case we find this statement concerning the topography of the road:

"By reason of the downgrade of the highway leading west toward the crossing, lights on motor vehicles traveling in that direction are focused only on the roadway until in immediate vicinity of the crossing, at which point the highway makes an *abrupt upgrade* and the lights then become focused on a view of the crossing." (Emphasis supplied.)

In the instant case the road was perfectly straight for nine hundred feet prior to reaching the crossing and the highway was on a slight downgrade for the last three hundred and fifty feet and there was no abrupt change in the grade so as to take this case from the operation of the general rule enunciated in Southern Railway Co. v. Lambert, supra, and bring it within the application of the exception announced in Callaway v. Adams, supra.

It should be noted that in both the Guthrie case, supra, which is quoted in Callaway v. Adams, and the Lambert case, supra, the plaintiff was a passenger and the question of contributory negligence was not involved.

Plaintiff's third assignment of error is that:

"The trial court erred in sustaining the objection of the defendant to the offer of plaintiff to make proof of the existence and nature and designation of other types of signals in common use of well regulated railroads at the kind of crossing here involved to show they do exist, and are commonly used by other railroads at similar crossings."

The only statutory provision requiring the erection and maintenance of signs at railroad crossings is Title 48, § 172, Code, which reads:

"Every railroad company must erect, at all points where its road crosses any public road, at a sufficient elevation to admit of the free passage of vehicles of every kind, a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars."

It is admitted by all parties that there were *two* signs at the crossing in question at the time of the accident. Moreover, the quotation from the Guthrie case, supra, in Callaway v. Adams, supra, is sufficient answer to this assignment of error in view of our holding that there was no "peculiar environment" or "special condition of hazard" in the instant case to bring it within the exception to the general rule.

We have carefully considered the evidence contained in the whole record and we think the judgment should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and GOODWYN, JJ., concur.