69 So.2d 449

## GULF, M. & O. R. CO. v. SIMS.

### 6 Div. 436.

Supreme Court of Alabama.

Nov. 5, 1953.

Rehearing Denied Jan. 21, 1954.

Dominick, Rosenfeld & Nicol, Tusca-
loosa, for appellant.

F. F. Windham and Jas. L. Marshall, Tuscaloosa, for appellee.

MERRILL, Justice.

This is an appeal from a judgment in favor of plaintiff in a suit based upon a collision between plaintiff's automobile and defendant's locomotive at a public crossing on Fifteenth Street in the City of Tuscaloosa.

The case went to the jury on three counts, all of which charged simple negligence. Count 1 charged that defendant negligently caused the railroad engine to collide with plaintiff's automobile; count 4 charged that defendant was negligent in allowing or permitting a hole or holes to be in its roadbed between the rails on the crossing; count 5 charged defendant with negligently causing, permitting or allowing the tracks and roadbed across Fifteenth Street to be and remain in an unsafe and dangerous condition. Defendant's plea was in short by consent.

Defendant argues assignments of error 2, 3, 5 and 6, 7 and 8, and 9 and 14.

■ Assignment of error 2 charges that the court erred in overruling the demurrer to count 4 in that said count did not aver or show the existence of any duty owed by the defendant to plaintiff. We think the demurrer was properly overruled. The defendant owed a duty to the public to keep the part of the street occupied by it in a safe condition. Montgomery St. Ry. Co. v. Smith, 146 Ala. 316, 39 So. 757; Title 37, § 648, Code 1940.

Assignment of error 3 charges that the court erred in overruling the demurrer to count 5 in that said count did not aver or show the existence of any duty owed by defendant to plaintiff, and defendant cites the case of St. Louis & S. F. R. Co. v. Jamar, 182 Ala. 554, 62 So. 701, in support of this contention. A careful study of that case will disclose that the plaintiff there fell in a hole between trestles of two distinct railroads; that there was no duty on the part of the defendant to cover that part of the street, and even though plaintiff sufficiently amended his pleading, still he could not recover, the evidence remaining the same. The demurrer was properly overruled.

Assignments of error 5 and 6 are argued together and complain of the ruling of the court sustaining objections to two questions propounded to appellant's witness Neilson as follows:

No. 5. "Q. Were any repairs made on the warning flashing signal lights between the date of your last inspection before the accident and the date of the inspection after the accident?"

No. 6. "Q. Were they in the same condition on January 29th as they were on January the 16th?"

■■ There is no evidence in the record that the signal lights were examined on January 16th. All the testimony shows they were examined on January 19th and January 29th. It was therefore proper to sustain the objection to the question relating to the 16th. Assignment No. 6 being without merit, and No. 5 having been grouped with it in argument, the latter will not be considered. Taunton v. Trammell, 254 Ala. 252, 48 So.2d 190.

■ Assignments of error 7 and 8 relate to the ruling of the court on a question and answer. The same witness answered the identical question without objection earlier in his testimony (Record p. 189), and the error, if any, was rendered harmless, especially so since the answer was favorable to appellant. 2 Alabama Digest, Appeal and Error, ⬅1033 (3) and 1058 (7).

Assignment of error 9 complains that the court erred in refusing to give the affirmative charge with hypothesis.

This brings us to a statement of pertinent parts of the evidence. Plaintiff testified that he was driving west on Fifteenth Street and after crossing the A. G. S. tracks, he stopped, looked and listened before crossing the tracks of defendant, which consisted in part of a sidetrack fartherest east and the main line 46 feet west of the sidetrack, both of which crossed Fifteenth Street in an approximate north-south direction. He further testified that he did not see or hear anything; that he

was familiar with the crossing since he used it practically every day and night going to and from his home; that the flashing signal light was not working; that the pavement around the tracks was in bad shape; and after stopping, he started his car and his speed was up to 10 or 15 miles per hour when he noticed the train; that he hit a hole in the pavement of the street; that thereafter he was not able to control his automobile and it "swayed and pulled into" the engine. He further testified that he was about 10 feet from the locomotive before he noticed it; that he was on the extreme right or north side of Fifteenth Street; that the locomotive was about four-fifths across the street and he could not say whether it was moving, whether its lights were burning or whether the bell was ringing. The left front of plaintiff's automobile struck the right front of defendant's locomotive, damaging both, and plaintiff received serious injuries to his left arm and shoulder.

Defendant's engineer testified that he was operating a diesel electric locomotive which was pulling three box cars, and that he was approaching the crossing at about two miles per hour, headed north; that there was no traffic except the automobile involved; that he noticed the lights of the automobile while he was 300 to 500 feet south of the crossing and there was nothing to obstruct his vision of the automobile from that point to the time of the collision; that when he first saw the automobile it was motionless and on the *south* side of Fifteenth Street (which would be the "wrong" side of the street for an automobile going west), and the place where the automobile was stopped was 70 feet from the track on which the locomotive was proceeding. The paved portion of the street at this crossing was 34 feet wide. The engineer further testified that after he entered the intersection about 10 feet, the automobile started up and headed west angling from the south side of the street to the north side; that as the locomotive reached the center of the street, the automobile crossed the G. M. & O. sidetrack

(46 feet away) and he slowed the locomotive to 1 mile per hour; that when the locomotive had gone about 10 feet past the center of the street, "I saw I was going to have a collision and I applied the brakes to the emergency," at which time the automobile was about 10 feet from the locomotive; that when the locomotive came to a stop about 5 feet from the north edge of the pavement and when it stopped, the left front of the automobile crashed into the right front of the locomotive, but its front wheels never got on the track; that the time was 11:20 P.M., the weather clear, cold and windy and all the flashing signal lights and bells were working and continued to flash and ring until the locomotive was removed some time later.

All the witnesses for both plaintiff and defendant who reached the scene of the collision before plaintiff was removed, testified that the flashing signal lights, which flashed whenever a train was approaching or on the crossing, were working. Plaintiff admitted that he had had two drinks of whiskey before 10:00 P.M. and there was evidence that he was intoxicated when he reached the hospital.

Many other witnesses testified but it is unnecessary for the purposes of this case to state the effect of their testimony.

■ We must hold under the undisputed evidence that plaintiff was chargeable with contributory negligence as a proximate cause of his injury, which defeats this action as for initial negligence, if any, on the part of the trainmen. Watson v. Birmingham Southern R. Co., Ala.Sup., 66 So. 2d 903;[1] Louisville & Nashville R. Co. v. Johns, 258 Ala. 440, 63 So.2d 574; Gulf, Mobile & Ohio R. Co. v. Sanders, 255 Ala. 386, 51 So.2d 531; Louisville & Nashville R. Co. v. Turner, 192 Ala. 392, 68 So. 277; Johnston v. Southern Ry. Co., 236 Ala. 184, 181 So. 253, 254. In the last case cited, the Court said:

"On the question of contributory negligence, it appears, without dispute, that the decedent was quite famil-

iar with this crossing. The conditions relied upon as rendering it more hazardous to motorists only emphasize the importance of observing the duty to stop, look, and listen, and to have the automobile under control.

"This legal duty grows out of the well-known fact that a train cannot be stopped, or removed, if already on a crossing, with the same dispatch as a motorcar equipped as the law requires. It is a duty to see that the crossing is clear of danger from approaching trains, and even a more patent duty when the train is already on the crossing, and its presence is a warning. This court has often, with great emphasis, declared it is negligence as matter of law to disregard this duty. We think it a rule conservative of human life, and therefore to be steadfastly applied."

■ We now come to the question of subsequent negligence. A sufficient count charging simple negligence in general terms can be the basis for recovery for subsequent negligence after the discovery of the peril on the part of the defendant. Louisville & Nashville R. Co. v. Johns, supra; A. B. C. Truck Lines v. Kenemer, 247 Ala. 543, 25 So.2d 511; Tindell v. Guy, 243 Ala. 535, 10 So.2d 862; 15 Alabama Digest, Negligence, ⚖119(6).

■ Original contributory negligence is no defense to an action for subsequent negligence proximately causing injury. A. B. C. Truck Lines v. Kenemer, supra; Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 27 So. 1006. The contributory negligence that would bar a recovery when liability is sought to be fixed by subsequent negligence is such negligence on the part of the injured party as is concurrent with or subsequent to the subsequent negligence of the party charged. "For instance, if, after the injured party and the party charged have become aware of the imperiled situation of the former, the former fails to conserve his own safety as due care and diligence requires, and this negligence on his part is subsequent to or concurs with that

of the party charged, and the injury proximately results therefrom, the negligence of the injured party is contributory, and he cannot recover." Louisville & Nashville R. Co. v. Young, 153 Ala. 232, 45 So. 238, 239, 16 L.R.A.,N.S., 301.

The case of Mobile Light & R. Co. v. Gadik, 211 Ala. 582, 100 So. 837, 839, is very much in point. There the Court said:

"The law exacts a high degree of care of a motorman upon discovery of peril to persons or property at a public crossing—a care measured by the duty to protect life and property. He should be watchful, alert, and capable; must promptly use all the means known to persons of skill in his position to avoid an accident. The moment of time when these new duties begin cannot well be better defined than by the natural import of the words, 'upon discovery of peril.' An automobile seen approaching a crossing at a safe distance and at usual speed does not within itself suggest peril. The driver may be taken to have the use of his senses, and to exercise the ordinary care which the occasion demands. But, if the automobile continues to approach without slowing up, or the driver is seen to be inattentive, so that the situation suggests a probable collision unless prompt measures are taken, the duties of the motorman begin. One of the duties is usually to give a warning signal. If the automobile driver appears inattentive to the approach of the street car, this is an urgent duty. It should be given before it is too late to avoid a collision. If the motorman sees he cannot stop his street car short of the point of collision, the giving of warning signals becomes more imperative.

"In the case at bar there was evidence that the motorman saw plaintiff's automobile when 25 to 40 feet from the point of contact. There was evidence that the motorman did sound the gong and otherwise strive to prevent the accident, and that plaintiff ran his car into the side of the street

car; but there was evidence that no signal of warning was given. Without discussing other features of the evidence, this feature made a case for the jury on negligence after discovery of peril. The affirmative charge on count 1 was properly refused. Hines v. Champion, 204 Ala. 227, 85 So. 511; Armour & Co. v. Alabama Power Co., 17 Ala.App. 280, 84 So. 628; Birmingham Ry., Light & Power Co. v. Sprague, 196 Ala. 148, 72 So. 96."

In the instant case the engineer had watched plaintiff's automobile from 500 feet before he reached the crossing until the collision. The locomotive was 10 feet in the crossing before the car started up from a point on the "wrong" side of the street 70 feet away. While the automobile was still 46 feet away and the locomotive was in the middle of the street and could have been stopped within 5 or 6 feet, the engineer did not give a warning signal. True the bell on the locomotive was ringing, but the engineer did not blow the horn from some time before the locomotive entered the intersection until the collision occurred. This admitted failure on his part to sound the horn after he saw plaintiff's automobile start toward the track from a stop on the "wrong" side of the street, was sufficient to send the case to the jury on count 1 which embraced subsequent negligence. In Louisville & Nashville R. Co. v. Griffin, 240 Ala. 213, 198 So. 345, 347, we said:

"In Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546, 549, the long prevailing rule is stated as follows: 'Under the scintilla of evidence rule (Tobler v. Pioneer Min. & Mfg. Co., 166 Ala. 482, 517, 518, 52 So. 86; Amerson v. Corona Coal & Iron Co., 194 Ala. 175, 69 So. 601), questions for the jury were whether or not the headlight was burning, whether due signals were given of the approach of the train to the crossing, of the conditions that would enable or prevent defendant's engineer seeing plaintiff's intestate approach the train, heedless of his danger, and, after such knowledge, whether defendant's engineer in a due and orderly way did what a reasonably prudent and careful engineer should and could have done under the circumstances and with proper signals and appliances to warn intestate of his danger or to avert the injury. * * *' * * *

"In Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223, 226, Mr. Justice Somerville stated the result of our decisions on this important point as follows: 'The burden, therefore, was on plaintiff to show that a servant of the defendant corporation, in service on its train on this occasion, discovered that plaintiff's intestate was in peril of a collision, as averred, in time to have warned him of the impending collision, or by other means to have prevented it, and nevertheless, negligently failed to give him such a warning, or to use other available means for its prevention. * * *' "

"If the engineer discovered such peril in time to give plaintiff warning by a blast of the whistle, and failed to do so, he would be guilty of subsequent negligence." Johnson v. Louisville & Nashville R. Co., 227 Ala. 103, 148 So. 822, 828. As to duty to give a warning signal see also Alabama Great Southern R. Co. v. Bolton, 242 Ala. 562(2), 7 So.2d 296(2); Southern Ry. Co. v. Sherrill, 232 Ala. 184, 167 So. 731; Central of Georgia R. Co. v. Bates, 225 Ala. 519, 144 So. 9; Thompson & Donohoo v. Mobile & Ohio R. Co., 211 Ala. 646(4), 101 So. 441(4).

Assignment of error No. 14 complains that the court erred in overruling the motion for a new trial on the basis that the verdict was against the preponderance, or the great weight, of the evidence. The law relating to that question is fully stated in Cobb v. Malone, 92 Ala. 630, 9 So. 738, and need not be repeated here except to reaffirm the statements that the correctness of the verdict is strengthened when the presiding judge refuses to grant a new trial, and the verdict should not be set aside because it may not correspond with the opin-

ion of the court as to the weight of the testimony or because it is against the mere preponderance of the evidence.

The judgment is affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.