109 So.2d 913

**SOUTHERN RAILWAY COMPANY**

v.

**Roy TERRY.**

**8 Div. 81.**

Court of Appeals of Alabama.

Aug. 19, 1958.

Rehearing Denied Sept. 9, 1958.

Reversed on Mandate March 10, 1959.

Mitchell & Poellnitz, Florence, for appellant.

Thos. C. Pettus, Moulton, for appellee.

HARWOOD, Presiding Judge.

Suit below was for the recovery of damages sustained by plaintiff's tractor when it was struck by defendant's train at a crossing in the Town of Courtland.

The complaint contained two counts. Count 1, as amended, charged the defendant railroad with negligence in failing to warn of the approach of its locomotive to the crossing by ringing the locomotive's bell and sounding its horn.

Count 2, charged the defendant generally with negligence in the operation of its train.

To each count the defendant plead in short by consent, etc.

The verdict was in favor of the plaintiff, damages being assessed at $800.

The defendant's motion for a new trial being overruled, an appeal was perfected to this court.

For convenience, we will hereinafter in this opinion refer to the appellant as the defendant, the position it occupied in the court below, and so with the appellee, plaintiff below.

As to the site of the collision, the evidence shows that College Street runs north and south in Courtland, and is crossed by the defendant's railroad running east and west. On the northeast corner of the intersection is a vacant lot, and north of this vacant lot is Blythe's store, fronting on College Street. There is a rather large oak tree growing on the lot near College Street, about midway between Blythe's store and the railroad track. Some tractors and farm machinery were parked on the vacant lot on the side of the railroad right of way and parallel to it.

The evidence introduced by the plaintiff below, except as to damages, consisted of the testimony of Carl Gibson, who was driving the tractor as an employee of the plaintiff, and of Robert Hill.

Carl Gibson testified that about 2:30 P.M. on the day of the collision he was driving a tractor south on College Street. A wagon filled with ground corn was hitched to the tractor.

He was familiar with the crossing, and as he approached it he stopped the tractor 5 to 10 feet from the track and looked in both directions. He could not see very far toward the east, the direction from which the train came, as the tractors and the oak tree cut off his view. Not hearing, or seeing a train he proceeded to cross the track. The train was "on him when he first saw it," and he attempted to change gears and cut the tractor to the right. This operation killed the engine of the tractor and he jumped from the tractor just as it was hit by the locomotive.

As to pertinent distances Gibson testified that it was about fifteen feet from the railroad track to Blythe's store, and about ten feet from the track to the oak tree.

On cross examination Gibson testified that on the day following the collision he signed a written statement concerning the collision for A. J. Parker, claim agent for the defendant. At the trial he stated he did

not remember some of the statements as written, and stated he was scared at the time he gave the statement. Mr. Roy Terry, the plaintiff, was present at the interview, and witnessed Gibson's signature as did Parker. After Gibson signed the statement he made the following notation "—read—true."

This statement signed by Gibson sets forth, among other things:

"When I reached College Street, I turned south toward the railroad crossing. Mr. H. B. Terry pulled out from a store ahead of me, and I was following behind Mr. Terry when he drove over the crossing and saw him throw his hand up, and then I saw the train coming west. I was then about 20 or 25 feet north of the track when I saw the train, and I put the brakes on and tried to stop, but the weight of the trailer kept me from stopping until the front end of the tractor was on the track. I cut the wheels to the right and tried to put the gears in reverse, but the motor died, and then I jumped just as the train hit the tractor. When I first saw the train it was about 40 to 50 feet east of the crossing and looked like it was travelling pretty fast, and when I reached the track the train was right on me. * * * I did not hear the horn blow on the train and did not hear the bell ringing. The view to the east from the north side of the crossing is obstructed until the front of the tractor was right up to the track. If I had not seen the train at the time Mr. Terry waved at me, I would have gotten all the way up on the track before the accident."

Robert Hill's testimony was largely corroborative of Gibson's testimony given at the trial, though he testified that at the time Gibson stopped the tractor he was a little past the Oak tree, which this witness estimated was about 20 feet from the track, but had not passed the tractors in the vacant lot. He did not hear the train whistle, or any bell ringing.

Photographs of the locus, taken on the day following the collision were introduced into evidence by the defendant, it first being established that the tractors and farm machinery shown in the photographs were in the same positions as they were at the time of the collision.

For the defense, C. A. Turner, defendant's station agent, testified that he saw the collision; that Gibson did not stop as he approached the crossing, and the tractor skidded 20 or 25 feet until it stopped on the track, a dark mark shown on defendant's Exhibit being the skid mark.

Mr. Turner further testified that from a point five feet north of the track one could see more than half a mile down the track to the east, between a half and a quarter of a mile 10 feet north of the track, and a third of a mile 15 feet north of the track.

Mr. Turner further testified that between the railroad track and the vacant lot there is a drainage ditch 12 inches in depth.

Stanley Kracke for the defense testified that his attention was first attracted to the tractor because of the speed it was being driven; that he first saw the tractor when it was forty feet from the track, and it did not stop until brakes were applied and it slid onto the tracks. He heard the train running, but did not hear it blow, and did not hear any bell.

Edward Dodson testified for the defense that Gibson did not stop before reaching the track and that Gibson was standing up on the tractor when he saw him three or four feet from the track.

This witness, during the trial had measured with a steel tape certain distances, and testified that the distance from the north rail to Blythe's store was 50 feet and six inches, and from the north rail to the drainage ditch was twelve feet, and all of the farm machinery on the vacant lot was more than twelve feet from the north rail.

Henry King and Elbert Crow each testified that Gibson did not stop the tractor before going on the track. King said his

attention was attracted by the sounding of the locomotive horn which he heard before he could see the train.

S. M. Grider was fireman on the locomotive, but had previously qualified as an engineer for diesel locomotives. He was operating the locomotive at the time of the collision. He testified that he was keeping a lookout at the time the train approached Courtland, and was seated on the left hand or south side of the locomotive, which at the time was running in reverse. Appellant's tractor approached from the north side. His first knowledge of the approach of the tractor was when G. R. Grimmett, the engineer, called "Big Hold It." At this time the locomotive was 100 feet from the crossing. He immediately applied the brakes in emergency.

Grimmett, the engineer, testified he was seated on the north side of the locomotive, and was keeping a lookout. Crossing signals were being blown. He observed the tractor as it came from behind a store about 40 feet from the crossing, and when the train was 200 feet from the crossing. He called "Big Hold It" to Grider who immediately applied brakes in emergency. The train was then going at a speed of about ten miles per hour, and it would have required 330 feet to bring it to a stop.

The term "Big Hold It" means to apply emergency brakes.

While the diesel engine was being driven in reverse, it appears from the testimony of Grimmett and Grider that diesel locomotives are constructed to be driven in either direction, and the driver merely faces in the direction he is going.

It further appears from their testimony that everything that could. be done was done in an effort to bring the train to a stop.

We have examined with care the photographs introduced in evidence depicting the crossing, and its surroundings.

In our opinion they clearly show that had Gibson stopped the tractor 5 or 10 feet from the crossing, his view down the track for a considerable distance would not have been obscured. Certainly his view would not have been obscured by the oak tree as he would have been beyond it. The machinery on the vacant lot sat more than twelve feet from the track, and would not have obstructed Gibson's view down the track to the east. Even had Gibson been even with the machinery, or a little to the north of it, the photographs show that sitting 3 or 4 feet high on the tractor, the machinery would not have obstructed his view.

■ Had Gibson stopped, looked and listened, he could have seen or heard the train approaching when he drove the tractor onto the track. His testimony to the contrary, in view of the photographic evidence showing otherwise, constitutes no conflict in this regard. Atlantic Coast Line R. Co. v. Barganier, 258 Ala. 94, 61 So.2d 35; Peters v. Southern Railway Co., 135 Ala. 533, 33 So. 332.

■ We hold that under the undisputed evidence Gibson was chargeable with contributory negligence proximately causing the damage to the tractor, which defeats this action in so far as there may have been primary negligence in the operation of the locomotive. Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449.

The appellant was therefore entitled to the affirmative charge as to count 1, which charged primary negligence resulting from failure to warn of the locomotive's approach as the proximate cause of the damage.

We come now to consider whether the judgment can be upheld under count 2, the simple negligence count, charging in general terms negligence on the part of the servants or agents of the appellant in the operation of the locomotive.

■ A sufficient count charging simple negligence in general terms can be the basis of recovery for subsequent negligence after the discovery of the peril on the part of

the defendant. Gulf, M. & O. R. Co. v. Sims, supra.

█ Counsel for appellant strenuously argues that the question of subsequent negligence is not involved in this review for the reason that in the court below the case was tried on the theory of initial negligence, and contributory negligence, was submitted to the jury only on this theory, and the appellant requested no written charges as to subsequent negligence.

We do not accord to this contention. The pleading was in short by consent. In this regard the record shows the following:

"Mr. Mitchell: We are prepared to plead in short by consent, and have prepared that pleading in writing, if it is satisfactory with the court.

"The Court: It is satisfactory for you to plead that if you want to plead in that manner.

"Mr. Mitchell: What we had in mind was the general issue on contributory negligence, and if you rely on subsequent negligence, we rely on subsequent contributory negligence. I would like to have it in the record."

The record further shows that in his oral charge the court instructed the jury:

"In Count 2 he says· he sets up that the defendant's agents or servants, while operating the train, were negligent. They have the right to make a claim for any negligence which the evidence reasonably satisfies you existed on that occasion, and which proximately caused the damage to the plaintiff. The law does not require him to set out what the negligence was."

\* \* \* \* \* \*

"There is another kind of negligence. Negligence, as a general rule, set up in Count Two, is doing that which a reasonably prudent person would not have done, or failing to do that which a reasonably prudent person would have done, if so situated as the parties

in question. So it is a lack of due care on the part of the individual. We are familiar with the term; we're probably not familiar with the definition."

The above we think was sufficient to submit to the jury the issue of subsequent negligence.

The plaintiff, and his witness Crow, and also defendant's witness Kracke, testified they did not hear any horn sound, or bell ring, prior to the locomotive entering the crossing.

█ This negative evidence is sufficient to raise a conflict as to whether those acts did occur although there was positive evidence that the horn was sounded, and the bell was rung. Atlantic Coast Line R. Co. v. French, 261 Ala. 306, 74 So.2d 266.

Grimmett, the engineer, testified that he first saw the tractor as it came from behind the building, approximately 40 feet from the track, the train being then 200 feet from the crossing and travelling at 10 miles ·per hour. The tractor was approaching the crossing in such manner as to indicate it was not going to· stop. He immediately yelled "Big Hold It." The whistle cord was on the opposite side of the cab.

Grider, the fireman, also qualified as an engineer, who was actually driving the locomotive, testified that he was first aware of the tractor when Grimmett yelled "Big Hold It," about 100 feet from the crossing. He immediately turned loose the whistle cord, "swiped the gauge," and applied brakes as in emergency.

█ In determining the propriety of refusing the general affirmative charge, when requested by the defendant, the evidence offered by the plaintiff must be taken as true. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

While the fireman may have applied the brakes in emergency, and sanded the tracks, and have done all things proper to avoid the injury, it was open for the jury to find that ·

a sharp blast of the whistle may have warned Gibson. Pollard v. Crowder, 239 Ala. 112, 194 So. 161.

In the very recent case of Southern Ry. Co. v. Hughes, 267 Ala. 418, 103 So.2d 324, 327, Livingston, C. J., wrote:

"If the plaintiff gave indication of inattention or of unconsciousness of his surroundings, our cases are to the effect that the trainmen should take immediate action, but not if there is nothing to indicate that he is not possessed of his senses or conscious of his danger; and if the speed of the approaching car and its distance to travel are such as to manifest a probability that it will not stop or it is in apparent existing danger in that respect, the duty of the trainmen then begins if by some warning or slackening of speed the collision might be averted. Atlantic Coast Line R. Co. v. Flowers, supra, 241 Ala. [446] at page 451, 3 So.2d [21] at page 24; Johnson v. Louisville and Nashville R. Co., supra, 227 Ala. 103, 148 So. 822; [Id.], 240 Ala. 219, 198 So. 350."

■ It is our conclusion that this case is governed, both as to the refusal of the affirmative charge requested by the appellant, and as to the court's refusal to grant appellant's motion for a new trial on the ground that the verdict is not sustained by the great preponderance of the evidence by the doctrine enunciated in Gulf, M. & O. R. Co. v. Sims, supra, and Southern Ry. Co. v. Hughes, supra.

■ Counsel argues strenuously that this case must be reversed under Atlantic Coast Line R. Co. v. Barganier, 258 Ala. 94, 61 So.2d 35. We pretermit discussion of the Barganier case and its implications, since we are bound by the decisions of our Supreme Court, and are convinced that this case is within the influence of the more recent Sims, and Hughes cases, immediately, supra.

■ The principles enunciated in appellant's refused charges Nos. 16 and 21 were adequately covered by the court's oral charge, and other charges given at appellant's request. No error therefore resulted from their refusal.

■ Appellee has cross assigned as error the refusal of the court to submit to the jury a written charge to the effect that if the jury returned a verdict in favor of plaintiff, he would be entitled to interest on the damages assessed from the date of collision, and requests that we affirm the judgment but render judgment here for such interest.

We are without authority in the matter, this being a jury case. Cook & Laurie Contracting Co. v. Bell, 177 Ala. 618, 59 So. 273; Sections 810 and 812, Title 7, Code of Alabama 1940.

Affirmed.

HARWOOD, P. J., Presiding Judge.

Reversed and remanded on authority of Southern Railway Company v. Terry, 268 Ala. 510, 109 So.2d 919.