**Ervin JUPITER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 8392.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 17, 1960.

Julian B. Humphrey, New Orleans, La., for plaintiff.

Lloyd C. Melancon, Asst. U. S. Atty., New Orleans, La., W. H. Welsh, Brookley Air Field Base, Ala., for defendant.

Beard, Blue & Schmitt, David C. Treen, New Orleans, La., for Edward Levy Metals, Inc., intervenor.

J. SKELLY WRIGHT, District Judge.

The plaintiff, Ervin Jupiter, was seriously injured when he was thrown from the bed of his truck trailer as it was being loaded with surplus materials at the Brookley Air Force Base in Alabama. At the time, Jupiter was employed by a New Orleans scrap dealer who had purchased the surplus materials from the United States and had sent Jupiter to the base to pick them up.[1] Jupiter claims that his injury was caused by the negligence of the Air Force crane operator loading the truck. He sues under the provisions of the Federal Tort Claims Act.[2]

On the morning of October 2, 1957, Jupiter arrived at the Brookley Base with his truck to pick up the load of scrap for his employer, pursuant to the contract with the United States. His truck was an open-bed semi-trailer of steel construction, length 35 feet, width 8 feet, height from the ground to top of the metal sides 12½ feet, and open at the rear without a tail gate. On arrival Jupiter was furnished the assistance of two base employees in loading his truck. One, Grady Lee Prine, operated a 20-ton truck-mounted Buckeye crane equipped with an orange-peel magnetic type

---

1. Under the provisions of the contract for the purchase of the scrap, it was the responsibility of the purchaser to supervise and provide the labor for loading of the trucks, except that the government was required to assist in the loading to the extent of dumping the material into the open truck.

2. 28 U.S.C. §§ 1346(b), 2674.

grapple. The other employee, Andrew Lee Presley, assisted in getting the scrap material together for the crane to pick up.

The bed of Jupiter's truck was first filled to one-third capacity with smaller pieces of heavy aluminum scrap. Since there was no tail gate on the trailer, it then became necessary to improvise one by placing several larger pieces of aluminum at the rear of the trailer in order that the smaller pieces of the load would not be lost en route to New Orleans. After the tail gate was completed, the load was finished off with large 13-foot aluminum airplane wing tanks.

During the loading, Jupiter sat on top of the side near the rear of the truck to direct the movement of the grapple in the bed of the truck. As holes in the load would appear, the crane operator would be instructed to move his bucket over the hole before opening. Thus even distribution of the scrap in the truck was achieved. When Jupiter determined that his trailer was loaded, he signalled the crane operator to stop loading and compress the load by tamping, or tapping, the aluminum wing tanks with the 1,400-pound grapple. It was during this tamping operation that the end of one of the wing tanks came in contact with Jupiter and catapulted him to the ground.

■■■ The government relies strongly on the contract provision placing responsibility for loading on the scrap dealer, Jupiter's employer. However, Jupiter was not a party to that contract and, consequently, is not bound thereby. Nevertheless, that provision of the contract, as well as the provision under which the government provided assistance in loading, may be considered in determining whether the parties litigant acted reasonably in the circumstances of this accident. While the United States,

under the contract, was not responsible for the loading, it was nevertheless responsible for the actions of its employees. If these actions were negligent, irrespective of the contract, the United States may be liable, provided the negligence was the proximate cause of the accident.[3]

There were only three witnesses to the accident, Jupiter, Presley and Prine, the crane operator. Jupiter testified that during the loading operation he remained on the ground. When the truck was loaded, he signalled the crane operator to stop, the crane operator nodded assent, Jupiter got up in the truck to level the load, and while so doing, with his back to the crane, he was hit.

Presley testified that Jupiter was sitting on a diagonal rail running from the top of the side to the top of the back of the truck during the loading operation, that Jupiter gave a signal to the crane operator to tamp the load, and that in tamping the large end of an aluminum fuel tank near the middle of the truck, the small end of the tank in the rear of the trailer came up and hit Jupiter, knocking him out of the truck and on to the ground.

The crane operator's testimony gives still a third version as to how the accident happened, although basically it does not differ from the testimony of Presley. Prine testified that from his position at the controls of the crane he could not see inside the truck. He therefore had to depend on Jupiter to advise him where to place the bucket before opening it to unload scrap into the trailer. He testified further that Jupiter signalled him to stop loading and tamp the load. This, he stated, was the usual practice. Jupiter was then standing or sitting near the rear right upper corner of the trailer. That is the last Prine saw of Jupiter

---

**3.** The law of Alabama, which governs this case, 28 U.S.C. § 2674, follows the common law with respect to torts. Jupiter, as a business invitee on government premises, was owed the duty of reasonable care. Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276. Contributory negligence in Alabama is a complete defense, and the burden of proving this defense is upon the defendant. Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449, 452; Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903.

until after the accident. After completing his tamping, he learned that Jupiter had been hurt.

If Jupiter's testimony is to be credited, he should, of course, recover. But Jupiter's testimony is in conflict with the testimony of both Presley and Prine on a very crucial issue, that is, whether Jupiter, knowing the tamping operation was to take place on his instructions, remained in or about the bed of the truck. If Jupiter saw the crane operator tamping the load, and voluntarily remained in a position where he could be flipped from the bed of the truck in the manner in which he was, then it would appear that he was contributorily negligent in remaining in a position of known danger.

This court concludes that Jupiter was standing or sitting near the rear of the trailer during the tamping operation, and that it was from this position he was hurled to the ground. In reaching this conclusion, the interest of Jupiter, as well as the interest of the employees of the United States, Presley and Prine, is weighed. Also to be considered is the reality of the situation involved in loading Jupiter's trailer. The crane operator not being in a position to see inside the truck, it was essential that Jupiter, or somebody, direct the loading. This direction could not come from the ground because of the sides of the truck and the improvised tail gate. Anyone directing the loading would necessarily have to be in a position where he could see the holes in the load and direct the grapple to those holes. This, of course, could be accomplished by climbing up and down the side of the trailer at intervals during the loading operation. In this case, however, it is more reasonable to believe that Jupiter simply sat on the top of the side near the rear of the truck, watching and directing the loading. It was also from this position that he directed the crane operator to tamp the load, and it was from this position that, in all probability, he was knocked to the ground.

It would appear from the evidence that it was common practice at the Brookley Base for the crane operator to use the grapple of the crane in loading the truck, or in tamping the load, with the truck driver in or about the load itself. Certainly this was a dangerous practice, as indeed it was admitted to be by the crane operator himself. And it was this dangerous practice which caused this accident. But this dangerous practice cuts two ways. If it was considered dangerous by the crane operator, its danger should have been even more apparent to the truck driver exposed in the vicinity of the grapple.

■■ The law of Alabama is not different from the law generally on the subject of contributory negligence arising out of voluntary exposure to a dangerous condition. If a plaintiff had knowledge of the existence of that condition, knew it was dangerous, and failed to exercise reasonable care with respect to it, he is guilty of contributory negligence.[4] This is the position in which Jupiter finds himself in this case. Unquestionably he knew of the conditions under which the truck was loaded. He saw it being loaded. He was even directing the loading. He knew, or should have known, that a crane grapple is a dangerous instrumentality not subject to precision control. He should have also realized the possibility that in tamping one end of a fuel tank, the other end may somehow be forced upward. In spite of knowledge of this danger, he allowed himself to stay in the vicinity thereof until his unfortunate accident.

■ In the alternative, plaintiff pleads last clear chance. But that doctrine has no application to the facts in this case. Last clear chance only applies when the plaintiff is in a position of peril, of which he is unaware, or from which he is unable to remove himself.[5]

4. Mackintosh Co. v. Wells, supra; Foster & Creighton Co. v. St. Paul Mercury Indem. Co., 264 Ala. 581, 88 So.2d 825.

5. Gulf, M. & O. R. Co. v. Sims, supra, 69 So.2d 452; Louisville & Nashville R. Co. v. Young, 153 Ala. 232, 45 So. 238, 239, 16 L.R.A.,N.S., 301.

Neither is shown here. Jupiter was aware, or should have been, of the danger involved in exposing himself in the vicinity of aluminum airplane fuel tanks being tamped with a 1,400-pound grapple and, unquestionably, he was able to remove himself from that danger.

Judgment for defendant.