173 So.2d 72

Hazel WOJCIECHOWSKI, as Adm'x,

v.

LOUISVILLE & NASHVILLE RAILROAD COMPANY.

7 Div. 607.

Supreme Court of Alabama.

July 9, 1964.

On Rehearing March 18, 1965.

Knox, Jones, Woolf & Merrill, Anniston, for appellee.

John R. Phillips, Anniston, for appellant.

LAWSON, Justice.

This is an action under the homicide statute, § 123, Title 7, Code 1940, by Hazel Wojciechowski against Louisville & Nashville Railroad Company, a corporation.

The complaint charged negligence on the part of the defendant and the defendant pleaded the general issue in short by consent in the usual form.

At the conclusion of the evidence, the trial court directed a verdict in favor of the defendant. Judgment followed the verdict. Plaintiff's motion for new trial was overruled and she has appealed to this court.

■■ The trial court did not err to a reversal in refusing to permit the jury to be polled, as that right does not exist in the case of a directed verdict. Reed v. Rideout's Ambulance, Inc., 212 Ala. 428, 102 So. 906.

The plaintiff contends that the trial court erred in directing a verdict for the defendant.

The death of plaintiff's intestate occurred at about 9:45 on the night of May 17, 1960, when the truck he was driving collided with defendant's diesel engine at a railroad crossing in the City of Albertville.

The truck was being driven on Highway 431, which for the purposes of this appeal may be considered as running in a northerly and southerly direction. The truck was headed north. The defendant's railroad track crosses Highway 431 at an angle, but for our present purposes we will consider that the railroad track runs generally in an easterly and westerly direction.

In the vicinity of the place where the collision occurred, Highway 431 is a four-lane highway, the two north-bound lanes being separated from the south-bound lanes by a grassy parkway. The highway was straight and practically level. There were no obstructions of any kind at or near the crossing which would interfere with the view of the crossing by one approaching it. The weather on the night of the accident was clear and the road was dry.

On both sides of the north-bound lanes and on both sides of the south-bound lanes there were warning signs. They consisted of the standard cross-buck signs, which were several feet high. On the poles supporting the cross-buck signs, flashing lights and automatic bells had been installed. Underneath the flashing lights was a sign saying, "Stop on Red Light."

According to the evidence for the defendant, its train approached the crossing from the east. The train was being pulled by two diesel engines. The train stopped about 200 feet east of the highway, where the freight cars were disconnected from the two engines. The two engines then pulled up across the north-bound lanes of traffic, where they waited for a switch to be thrown in order that the engines could be backed into a spur track leading into the premises of a business concern situated some distance east of Highway 431 and south of the railroad track. The switching operation was being made in order to pick up some freight cars from the spur track.

The defendant's testimony is to the effect that during the switching operation the rear end of the second diesel unit was approximately five or six feet west of the point where the switch was to be thrown; when the engines stopped the brakeman got down from the back of the engine and headed for the switch. Before he reached the switch and before the engines could be backed in an easterly direction to enter the spur track the collision occurred. Defendant's testimony as to the length of time that the engine blocked the north-bound lanes of traffic varies from five or six seconds to as much as thirty or forty seconds.

There is no dispute in the evidence of the fact that the truck being driven by plaintiff's intestate in the outside lane of that part of the highway designed for north-bound traffic did not stop before it crashed into the side of the lead engine, that is, the first of the two diesel units which were pulling the train.

The evidence for the defendant is to the effect that at a point approximately 1,000 feet east of the crossing an electric switch was thrown, which automatically turned on the automatic flashing signal lights and bells; that the engineer of the train gave four blasts of the train whistle before entering the highway; that after entering the highway the flashing lights and automatic bells continued to operate and the bell on the engine was rung. There was no light in the cab of the engine but the headlight on the front engine was on. There were no street lights at the crossing.

If the defendant's evidence stood without dispute we think it would be clear that the trial court correctly gave a directed verdict for the defendant. The record shows that this action of the trial court was based on our holding in the case of Lambeth v. Gulf, Mobile & Ohio R. Co., 273 Ala. 387, 389, 141 So.2d 170, 172, wherein we said:

"The general rule, and governing here to sustain the ruling of the trial court, is that where a motorist fails to 'Stop, Look & Listen' before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, he is guilty of contributory negligence as a matter of law and his negligence will be treated as the sole proximate cause of his injuries. (Authorities cited)"

But in this case, as we have shown, the railroad provided special warnings to the motorist in the form of automatic lights and bells and one of the plaintiff's witnesses testified that he followed the course of the truck as it proceeded north toward the railroad crossing and that the flashing lights were not on and he heard no bells ringing. While he stated that the truck did not stop before entering the crossing, he testified that he did see the brake lights come on.

■ Of course, where, as here, we are dealing with the action of the trial court in directing a verdict in favor of the defendant below, we are required to review the evidence in the light most favorable to the plaintiff. Johnson v. City of Opelika, 260 Ala. 551, 71 So.2d 793.

■ The plaintiff contends that when the evidence is viewed in the light most favorable to her, the conclusion is inescapable that the trial court erred in directing a verdict in favor of the defendant, in view of the holdings of this court in Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 82 So. 534, and Washington v. Birmingham Southern R. Co., 203 Ala. 295, 82 So. 545.

In the Harrison case, supra, this court said on original deliverance as follows:

"The right of travelers to rely on automatic signals at crossings has been of recent and frequent discussion by the courts. The rule of the cases is that one who proceeds along a thoroughfare to a crossing when and where an automatic signal is known by him to be maintained, while entitled to place

or warranted in giving some degree of reliance upon the indication of safety which the signal implies, must nevertheless use such care in addition as an ordinarily prudent man would exercise under like conditions. Thus, if a railroad company has placed a gate, flagman, signal bell, gong, or automatic device at a crossing, and has so long maintained the same to warn travelers of the approach of trains or engines or the danger of attempting to cross that travelers (including plaintiff) have relied, and are authorized to rely, thereon in the exercise of due care, nothing of contradictory indication appearing, the failure of the company to operate the gate, or to flag, or to ring the bell, gong, or other automatic device at the crossing or in lieu thereof to give other due and proper warning of the approach of the train, would not wholly excuse the traveler approaching such crossing from the exercise of a reasonable care and caution such as would ordinarily be exercised by a careful and prudent man under similar circumstances. It would, however, have the effect, in the case of a traveler meeting his death at such crossing, to invoke the presumption that such traveler was in the exercise of reasonable care and caution immediately before and at the time of the collision, unless the other evidence should rebut that presumption Welch v. B. & O. R. Co., [7] Pennewill (Del.) 140 [23 Del. 140], 76 Atl. 50, 53. It has been held proper, where such automatic signal was maintained at crossings, to show 'that it did not work, on both the question of defendant's negligence and of plaintiff's freedom from fault.' * * *" (203 Ala. 292, 82 So. 542.)

· On rehearing in the Harrison case we said:

"Whether or not this was such a crossing that the statutory signals required would not have sufficiently conserved the safety of the traveling

public, and that the defendant was therefore under a legal duty to maintain additional warnings or signals, we need not decide, for the reason that this defendant erected and undertook to maintain an automatic gong to warn travelers upon the highway of the approach of trains at this crossing. Therefore one who knew of this gong had a right, to some extent, to rely upon its being rung or its failure to give a warning, and after the defendant placed the same there it was its duty to keep it in a working condition, or else give notice in some way that it was out of repair or was not working, and its failure to give warning was a circumstance for the jury as bearing both upon its negligence and the conduct of the driver. * * *" (203 Ala. 294, 82 So. 544.)

In the Washington case, supra, which arose out of the same facts as the Harrison case, supra, we said as follows:

"Pretermitting any decision as to the duty of the defendant railroad to establish an automatic gong at this particular crossing in the first instance, we held that, having so established it, and allowed travelers who were aware of it to rely to some extent upon its operation as a warning to them in crossing, it was defendant's duty 'to keep it in a working condition, or else give notice in some way that it was out of repair or was not working, and its failure to give warning was a circumstance for the jury as bearing both upon its negligence and the conduct of the driver.' * * *" (203 Ala. 296, 82 So. 546) (The quotation was from the Harrison case.) We also said in the Washington case:

"Though we think the weight of the evidence was to the contrary, yet some of the testimony would have supported a finding by the jury that the usual signals by bell and whistle were not seasonably given by the enginemen upon approaching the crossing. It was

therefore prejudicial error for the trial court to eliminate from the consideration of the jury, as a basis for their verdict, the question of defendant's negligence in respect to the maintenance in working order of the automatic gong, as was done by charge 'b'.

"As an abstract proposition, it was not incumbent upon defendant to keep and maintain this gong at this crossing, since other modes of warning might equally suffice. But, having so established it, and educated travelers to rely upon it, it was defendant's duty either to keep it in efficient operation, or to give notice that it was not in working order." (203 Ala. 296, 82 So. 546.)

In answer to this contention of plaintiff, the defendant cites our case of Gulf, Mobile & Ohio R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449, where the plaintiff testified that he was familiar with the crossing, since he used it practically every day and night and also testified that the flashing signal light was not working, yet this court held that under the undisputed evidence the plaintiff was chargeable with contributory negligence as a proximate cause of his injury, which defeated the action as for initial negligence, if any, on the part of the trainmen. The collision occurred at night. A number of cases were cited in support of that holding, but the only one in which there was evidence of a failure of a signal light or other automatic device to work is Gulf, Mobile & Ohio R. Co. v. Sanders, 255 Ala. 386, 51 So.2d 531. In the Sanders case, supra, like the instant case and the Sims case, supra, the collision occurred at night, that is, at 6:45 P.M. on the night of December 17, 1948.

In neither the Sims case nor the Sanders case did we give any consideration to our holdings in the Harrison and Washington cases, supra. Those cases, which had not been overruled, were not called to our attention in brief.

We are confronted, therefore, with the question of which cases to follow here.

We have given careful and deliberate consideration to the question and are constrained to hold that where there is evidence going to show that an automatic flashing light failed to work and a motorist familiar with the crossing and the presence of the signal light entered a railroad crossing at night without stopping, it is a question for the jury both as to the initial negligence of the defendant railroad and the contributory negligence of the motorist. In this case the evidence for the plaintiff shows that the deceased used the crossing once or twice a week. Hence, the jury could infer that he was familiar with the presence of the automatic flashing light.

We are constrained, therefore, to hold that the trial court erred in directing a verdict for the defendant and that the judgment appealed from must be reversed. It is so ordered.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, COLEMAN and HARWOOD, JJ., concur.

On Rehearing

LAWSON, Justice.

■ This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on or moving across a public grade crossing. The negligence of the driver of the motor vehicle will be treated as the sole proximate cause of an injury resulting from running into a railroad car at such a crossing, unless something intervenes calling for special precautions on the part of railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the automobile. St. Louis-San Francisco Ry.

Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110; Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262; Johnston v. Southern Ry. Co., 236 Ala. 184, 181 So. 253; Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903; Coe v. Louisville & N. R. Co., 272 Ala. 115, 130 So.2d 32; Lambeth v. Gulf, M. & O. R. Co., 273 Ala. 387, 141 So.2d 170. Based on the facts presented in those cases, it was considered that the presence of the train on the crossing was sufficient warning and notice of its presence.

We quoted in our original opinion from the Lambert case, supra. The quotation contains an incorrect statement to the effect that a motorist who fails to "Stop, Look and Listen" before reaching a public crossing and thereby runs into or collides with a train on the track is guilty of "*contributory* negligence as a matter of law." (Emphasis supplied) The word "contributory" was inadvertently used. Under the facts of the Lambert case and the facts of the cases cited in support of the statement which we quoted, the plaintiff could not recover because there was no initial negligence on the part of the railroad. The plaintiff's negligence did not merely contribute to his injury. It was the sole proximate cause of the injury.

In none of the cases cited above were we concerned with an automatic signaling device similar to that involved in the case at bar.

However, in the case of Southern Ry. Co. v. Lambert, supra, an ordinance of the City of Birmingham was involved. The ordinance read:

"It shall be the duty of flagmen and watchmen stationed at crossings of streets over railroads, whether there stationed voluntarily or pursuant to law, to remain at all times in full view of persons approaching said crossings, either on foot or in vehicles, and to promptly signal such persons to pass over if they can safely do so, or to stop if a train, locomotive or car is

*approaching* too closely to admit of safe passage." (Emphasis supplied)

Lambert, a city fireman, was injured when a fire truck on which he was riding ran into a flatcar of the defendant railway company standing on a street crossing. Lambert sought to recover damages of the railway company on the theory that the flagman or watchman stationed at the crossing negligently failed to give any signal to the approaching fire truck of the presence of the train on the crossing. In reversing a judgment in favor of the plaintiff on the ground that the defendants were due the affirmative charge, we said that the ordinance in question "was passed with evident regard to hazards from *approaching* trains" and held, in effect, that the ordinance placed no duty on the flagman or watchman to give signals to pedestrians or vehicles of the fact that a train was stopped on the crossing. In refusing to construe the ordinance as requiring that the signal be given in regard to trains stopped on the crossing, we said:

"It will be noted the Birmingham ordinance contemplates the flagman shall give both stop and go signals. Manifestly, such signals cannot be given to traffic in both directions when a train is moving or standing on the crossing. The ordinance calls for the stop signal if the 'locomotive or car is approaching too closely to admit of safe passage.' The ordinance was passed with evident regard to hazards from approaching trains. Maybe, while a flat car is on the crossing, the flagman could give light signals to be seen by motorists going in both directions. To do so, he would have to take a position off the track. His position should be such as to indicate the zone within which vehicles should come to a stop before reaching the danger zone. A change of position in that regard might easily increase the hazard· to those relying upon signals for guidance. On full reflection upon the incidents of such situation, we are impressed that a rule requiring the flagman to remain at his post, and give signals, which, in turn, would invite motorists to depend on signals, would involve greater hazards than the rule which requires motorists to look out for cars on the track, and renders their presence a sufficient warning. * * *" (230 Ala., 165, 160 So. 264)

In the instant case we are not concerned with an ordinance or statute which by its very terms exacts a duty of a watchman or fireman as to approaching trains. Unlike the situation in the Lambert case, supra, where the watchman or flagman could not give his signal on both sides of a crossing when a train was blocking the crossing, we are here concerned with permanent automatic electric signaling devices which the railroad had apparently voluntarily erected on both sides of the railroad track, which in addition to the lights and bells thereon warned the approaching motorist to "Stop on Red Light." Hence, we do not think our holding on original deliverance is in conflict with the Lambert case, supra.

In our original opinion we took cognizance of our holdings in Gulf, M. & O. R. Co. v. Sanders, 255 Ala. 386, 51 So.2d 531, and in Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449, in which cases the failure of automatic signaling devices was involved. In those cases the motor vehicles were run into the side of trains already on the crossing and despite the fact that such signaling devices were involved, we applied the rule of the cases cited in the first paragraph of this opinion, where no such signals were involved.

In refusing to follow the Sims case and the Sanders case in our opinion on original deliverance, we pointed out that the rule enunciated in Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 82 So. 534, and Washington v. Birmingham Southern R. Co., 203 Ala. 295, 82 So. 545, had not been called to our attention in briefs filed in the Sims and Sanders cases. We applied the rule of the Harrison and Washington cases.

In brief filed on behalf of appellee in support of its application for rehearing, able and experienced counsel insist that we erred in our opinion on original deliverance in applying the rule of the Harrison and Washington cases for the reason that the rule of those cases applies only to a situation where, as in those cases, the train was approaching but had not reached the public crossing and ran into a motor vehicle which reached the crossing before the train. It is argued that the rule of those cases does not apply to the facts of this case where the train had reached and was blocking a public crossing before it was hit by the motor vehicle.

Appellee says, in effect, that the signals were designed only to warn motorists of approaching trains and were not intended to give notice of the presence of a train on the track, inasmuch as there is no need for such notice since the presence of the train on the track is sufficient warning of the presence of the train.

█ Whatever may be the purpose of maintaining automatic signaling devices bearing the warning "Stop on Red Light" at a railroad crossing, even though it be intended to merely warn travelers of approaching trains, common justice demands that it shall be so constructed and maintained that it will not lure travelers on the highway into danger. It follows that a company which does maintain such a defective system should be held liable for injuries sustained solely because of the negligent failure of the company to keep it in working condition or else give notice in some way that it was out of repair or was not working, regardless of whether the system was designed to warn travelers of the approach of trains rather than to inform them of the danger from stationary or moving cars which block the crossing. As we have already observed, ordinarily the presence of a train across a public highway is a sufficient warning of danger to a motorist who sees it, or who by the exercise of ordinary care will be presumed to have seen it. But if, through no fault of the motorist,

the train is not observed, and he is injured by relying upon and reasonably acting in compliance with the signals of an automatic signaling device, the company should be liable therefor. When such signals are maintained by a company, even though the law does not require them to be installed, the traveling public has a right to rely upon the exercise of reasonable care on the part of the railroad company to keep them in good repair and in efficient working conditions. Mallett v. Southern Pacific Co., 20 Cal.App.2d 500, 68 P.2d 281; Langston v. Chicago & N. W. Ry. Co., 330 Ill. App. 260, 70 N.E.2d 852.

█ In our opinion, the effect of the signaling device here involved was not only to warn traffic of the approach of trains, but its nonoperation was to assure the traveler that it was safe to cross. The railroad company owed a duty to the truck driver to exercise reasonable care to keep it in good repair and in efficient working condition. Under the evidence in this case, a question was presented for the jury's determination as to whether the railroad company was guilty of initial negligence.

The question remains, was the appellant's decedent guilty of contributory negligence as a matter of law?

In the Harrison case, supra, we said that one who proceeds along a thoroughfare to a crossing when and where an automatic signal is known by him to be maintained, while entitled to place or is warranted in giving some degree of reliance upon the indication which the signal implies, must nevertheless use such care in addition as an ordinarily prudent man would exercise under like conditions; the traveler is not wholly excused while approaching the crossing from the exercise of a reasonable care and caution, such as would ordinarily be exercised by a careful and prudent man under similar circumstances. But it was further said in the Harrison case, supra, that the indication which the signal implied would have the effect in the case of a traveler meeting his death at such a crossing to

invoke the presumption that such traveler was in the exercise of reasonable care and caution immediately before and at the time of the collision, unless the other evidence should rebut that presumption.

As shown in the original opinion, at the place where the collision occurred the highway was straight for more than a quarter of a mile and practically level, and there were no obstructions of any kind at or near the crossing which would interfere with the view of the crossing by one approaching it. The weather was clear, visibility was good, and the road was dry. There was no overhead light at the crossing. The engine into which the truck crashed was black, but it had a large "luminous" L. & N. sign on it. The engine's headlight was on but it did not have an overhead oscillating light and there was no light in the cab of the engine. A witness for appellant testified that he did not hear any bells. The truck was traveling at a speed estimated by one witness as being thirty-five or forty miles an hour. The truck's brake lights were seen to come on shortly before the impact. There were no skid marks left by the truck.

A witness for the defendant, one of the train crew, testified that the accident happened within five or six seconds from the time the train went across the highway.

The distance from the point where the signaling device was located to the track where the collision occurred is not shown. We cannot fairly estimate that distance from the photographs introduced in evidence, although in one photograph it is made to appear that the distance is not great.

The question is indeed a close one, but we are unwilling to say that the evidence summarized above is sufficient to overcome the presumption that decedent's intestate was in the exercise of reasonable care and caution immediately before and at the time of the collision. Birmingham Southern R. Co. v. Harrison, supra.

We reaffirm our holding that a jury question was presented as to the railroad's initial negligence and the contributory negligence of the truck driver.

Application overruled.

All the Justices concur except MERRILL, J., not sitting.