Harl COLE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1560.

United States District Court
N. D. Georgia,
Rome Division.

Dec. 23, 1965.

D. B. Howe, Howe & Murphy, Tallapoosa, Ga., for plaintiff.

Charles L. Goodson, U. S. Atty., Julius M. Hulsey, Asst. U. S. Atty., Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

This is an action for damages brought pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671, et seq., by plaintiff, who, at the time of the alleged injury was a prisoner at the Federal Prison Camp, Maxwell Air Force Base, Montgomery, Alabama.

While thus engaged, plaintiff fell off the rear of a trash truck onto a concrete surface, receiving injuries to his left arm. Plaintiff contends that the government was negligent in the following particulars:

(a) In failing to maintain said truck and said ladder in a safe manner.

(b) In failing to have provided a place on the top of the truck by which plaintiff or others using said ladder could brace themselves.

(c) In failing to provide railings or other safety devices on said ladder to prevent plaintiff or others injury.

(d) By providing plaintiff a dangerous and hazardous location of work and requiring him to work thereon.

(e) By failing to properly inspect said truck and ladder.

(h) By allowing said truck to move forward and then suddenly and without warning, checking its speed by applying the brakes, causing an abrupt cessation of movement of the truck and causing the ladder to violently and suddenly swing under the truck and causing plaintiff to fall to the concrete and causing plaintiff injury as will be hereinafter detailed.

(i) In failing to properly anchor said ladder on said truck.

(j) In failing to use reasonable and legal degree of care toward plaintiff, and in injuring plaintiff.

In addition to the fact and law questions involved on the main issue, there are two collateral questions before the court for decision.

(1) The government, at the close of plaintiff's evidence made a motion for dismissal under Rule 41(b) on the grounds that the evidence showed that the claimant was entitled to compensation under 18 U.S.C.A. § 4126 as an exclusive remedy. This is the same grounds on which the government's motion for summary judgment was denied by Chief Judge Morgan on April 6, 1965.

(2) At pre-trial, it was stipulated in writing that the law of Alabama applies in the case but both parties stipulate the case may be tried as to negligence and damages according to Georgia law.

The government now contends that it was powerless to enter into such a stipulation and that the court *must* apply Alabama law to the main suit.

The case came on for trial on November 19, 1965, and is now ready for decision.

FINDINGS OF FACT.

On December 7, 1962, Harl C. Cole was sentenced to two years confinement for whiskey violations at Rome, Georgia. He served at Tallahassee, Florida, from January until April, 1963, at which time he was transferred to the Federal Prison Camp located within the confines of the federal reservation known as Maxwell Air Force Base, Montgomery, Alabama. The Camp is located on the opposite side of the landing strip from the main base some two miles by road from the main base. Daily, Monday through Friday, various details of prisoners are transported by truck to the base for the performance of housekeeping chores for the military. Such work is not prison industry nor is it in connection with the maintenance or operation of the institution where confined. Prisoners received no compensation for the work done and are subject to the direction and control of civilian employees of the military base.

Shortly after his arrival at Maxwell, Cole was assigned to the "garbage detail," or more properly, to the Refuse Collection Unit. This is a unit under the direction of a civilian foreman (Milton F. Varner) and is composed of 12 civilians and an average of eight prisoners, who, of course, change from time to time. It has 11 vehicles, including some automatic garbage disposal units. In its equipment are three 1959 Ford 1½ Ton "stake body" trucks, identical in appearance and equipment. At the time under investigation, each "stake" truck had been equipped with solid metal sides approximately 4 feet high affixed to the wooden bed, except at the rear. There was no tail gate in order to facilitate loading and unloading of loose trash, which could not be collected by means of the automatic loaders. At the rear end of the truck bed are four holes, normally used to insert "stakes" when the trucks are used to completely enclose a load.

In those receptacles, the government customarily hung a short step-ladder to facilitate the prisoners climbing into and out of the bed of the truck. At the time in question, these ladders were made with flat angle-iron sides with a hooked top inserted into the truck bed with two wooden treads of 2 x 6's of smooth-planed surface. Because of the "play" between the hooks and the holes, the ladders would easily swing 4–6 inches in each direction, but would not swing completely up under the truck bed because the end of the bed and rear of the chassis would stop the main part of the ladder. Normally, the steps were mounted by the prisoners many times a day during the normal work day (7:30 A.M.–2:30 P.M.) in the course of completing the assigned tasks, and many times they were mounted at the specific direction of supervisors. No hand holds were provided and the only means of maintaining balance was by placing the hands on the end of the sides or the bed of the truck.

From his first days at Maxwell, Cole was assigned to one of these vehicles and had been constantly so engaged up until August 19, 1963, the date of the accident

under investigation, which occurred at approximately 2:30 P.M. It had been raining during the day and was "misting" at the time. Upon completion of the day's run, the vehicle was driven by a civilian employee, Tyrus, to the "wash rack" for the purpose of hosing down the vehicle. The "wash rack" is really an asphalt area adjacent to the concrete apron of the air field. Next to the apron are sheds and buildings for maintenance purposes. The wash rack is a shed, attached to a building at right angles, and partially enclosed by a latticed fence on the front and end. Trucks are normally parked at the end, where hose connections are available.

On the day in question, Tyrus drove the truck to a point just off the concrete apron approximately 4 feet from the end of the shed and turned off the engine. Cole dismounted from the back of the truck and another prisoner, Billy Barker, dismounted from the cab, passed in front of the truck to the end of the shed and picked up the hose to begin cleaning the truck. Meanwhile, Tyrus had gotten out from behind the wheel and gone into the building attached to the shed to get a drink of water.

At the time, the entire wash-rack area was wet and the vehicle itself was wet from the previous rains. Located on the truck was a cardboard carton used by the detail to gather leaves and trash. In order to prevent water damage to it, Cole decided to remove it from the truck during the washing. As he started up the ladder, it swung forward and being unable to grip anything, his wet shoes slipped off of the wet treads and he fell on the concrete apron.

In the fall, Cole broke his left wrist and strained his left shoulder. Upon admission to the base hospital, a fracture of the end of the large bone where the hand joins the wrist was set and cast applied. No complaint was made about the shoulder and there was no evidence of any other injury. A "big arm" cast was removed after one month, then a "short arm" cast was applied for two more months, then physical therapy was be-

gun. About that time, Cole was discharged from his sentence. Upon discharge, he was healing satisfactorily and in the opinion of the attending surgeon, well on the way to complete recovery.

Subsequently, he has developed a loss of sensation in the left arm and hand and has a weak grip. This was due to the atrophy of the muscles in his left arm and some ischemic contracture due to the fracture. He has developed arthritis in the left shoulder, but it is uncertain whether this resulted from the injury or not. Presently, his arm movements— rotation, adduction, obduction, etc.—are within the normal ranges. It is the court's finding that he has a 15% disability of the left forearm and hand proximately caused by the injury received in the fall.

The injury was very painful at the time of its occurrence. Since that time, it has continued to cause mild pain. Plaintiff, due to pain, finds it difficult to sleep and uses mild pain-killers, such as aspirin, now.

Prior to confinement, Cole was unable to maintain steady employment because of lack of education and drinking. He had worked spasmodically with used cars, the Highway Department, saw-milling and pulpwooding, but his main occupation has been in his words "making liquor." At times he has earned up to $65.00 per week pulpwooding, but his annual income has never exceeded $2,-000.00. He receives a disability payment from nervous conditions as a World War II veteran. He is right handed and uses his right arm more than his left. At the time of the injury complained of, he was 43 years of age.

FINDINGS OF LAW.

■ (1) The government's motion for dismissal is denied. As stated this is based on the same grounds as the prior motion for summary judgment already denied. As pointed out in that opinion, compensation under 18 U.S.C.A. § 4126 is available as a matter of right only for injuries received while working on a prison industry or while maintaining and

improving the institution of confinement. See Winston v. United States, 2 Cir., 305 F.2d 253, aff'd sub nom. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805. Such is not the case here. Government counsel have stated that the Attorney-General would grant compensation to plaintiff upon proper application, apparently as a matter of grace and not of right. Such a tender is ineffectual, and would not bar the instant suit. For a similar case arising at Maxwell Field, see Lawrence v. United States, D.C., 193 F.Supp. 243.

■■ (2) In spite of the stipulation to the contrary, the court is compelled to apply Alabama law to the facts of the case. This is important in this instance as Alabama is a strict "contributory negligence" state, while Georgia is a "comparative negligence" state. Godfrey v. Vinson, 215 Ala. 166, 196, 110 So. 13. If this were a suit between private parties, there would be no hesitancy in ruling otherwise. The only means a court has of dealing with litigants is through counsel of record. Stipulations by counsel which would be subject to later veto by parties would end in utter chaos. However, the instant case is not between private parties and is brought under the Federal Tort Claims Act, creating the cause of action itself, and the court is bound by that statute, which provides in part for the entertainment of a suit only "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place* where the act or omission occurred." This language is a clear directive to apply only the law of the place, as here the state of Alabama. The rationale of this conclusion is illustrated by the fact that the parties could not have, by stipulation, created a cause of action under Georgia law if none existed under Alabama law. See in this connection Jupiter v. United States, 287 F.2d 388 (5th Cir.); Christopher v. United States, D.C., 237 F.Supp. 787(1); Land v. United States, D.C., 231 F.Supp. 883. Local law applies even where the cause of action arises on a government reserva-tion. Stewart v. United States, 7 Cir., 186 F.2d 627. As to the attempted waiver, see Munro v. United States, 303 U.S. 36(3) at 41, 58 S.Ct. 421, 82 L.Ed. 633.

■ (3) (a) We thus come to a determination of the main suit under Alabama law. As has been seen by the Findings of Fact, the government maintained the ladders and vehicle in question in an unsafe manner and the court holds that the government was negligent in the following particulars alleged:

(1) In failing to maintain said truck and said ladder in a safe manner.

(2) In failing to have provided a place on the top of the truck by which plaintiff or others using said ladder could brace themselves.

(3) In failing to provide railings or other safety devices on said ladder to prevent plaintiff or others injury.

(4) By providing plaintiff a dangerous and hazardous location of work and requiring him to work thereon.

(5) In failing to properly anchor said ladder on said truck.

Also, the court finds that the government was not negligent as to the other particulars alleged.

■ Consequently, the plaintiff is entitled to recover on account of the government's negligence unless he is prevented from doing so by his own negligence under Alabama law. In this respect, the burden is on the defendant. Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 69 So.2d 449; Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903.

■ (b) The application of the rules of assumption of risk and contributory negligence toward a prisoner are scarce, primarily because of the absence of such suits prior to Muniz v. United States, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805. However, the court is constrained to hold that the rules should not be applied as harshly against a prisoner as against a person not in custody. "In order to in-

voke the rule of assumed or incurred risk, it is essential that plaintiff, who exposed himself or his property, to danger, or who continued so to expose himself or his property, shall have done so voluntarily. The doctrine accordingly, can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger." 65 C.J.S. Negligence § 174, p. 851. In fact, Alabama has expressly held that the doctrine of assumption of risk does not apply to a convict laborer. Sloss-Sheffield Steel & Iron Co. v. Long, 169 Ala. 337(1), 53 So. 910.

It is said that the doctrine of contributory negligence is based on the maxim *Volenti non fit injuria*. Can it truthfully be said that a prisoner "consents" to an injury when he acts under compulsion? The imposition of the doctrine of contributory negligence between the negligence of a defendant and recovery by a plaintiff presupposes that there is a freedom of choice in the plaintiff's conduct and that he willingly and voluntarily acts negligently. At the least, "in determining whether one who has voluntarily exposed himself to danger was in the exercise of ordinary care, the fact that the act was done in the discharge of his duty is to be considered. If a person, in doing that which it is his right to do in the discharge of his duty, exercises ordinary care and prudence, he is not chargeable with contributory negligence as a matter of law although the result showed that he imperiled his life or personal safety in doing as he did." 65 C.J.S. Negligence § 126, p. 739. This is not to say that a prisoner cannot be held guilty of contributory negligence, but simply to state that his conduct should be measured in the light of his circumstances and the extent to which he is permitted to exercise ordinary caution and prudence for his own protection. Sloss-Sheffield Steel & Iron Co. v. Weir, 179 Ala. 227, 60 So. 851.

As a working prisoner, outside of prison, the plaintiff here was at least an invitee. Seeber v. United States, D.C., 232 F.Supp. 68 (also arising at Maxwell Field), as such he was entitled to a reasonably safe place in which to work and reasonably safe equipment with which to work. As has been seen, the government was deficient in this respect.

The prisoner accepts his equipment, usually without complaint; and it is seriously doubted that he could cause a change in the same even with complaint. Under such circumstances, he is not guilty of contributory negligence so as to prevent recovery by using the equipment provided in the normal manner intended. The Alabama law infers that a prisoner might be guilty of contributory negligence if he complies with orders "in a dangerous and hazardous way when the same could be done in a safer way." See Sloss-Sheffield Steel & Iron Co. v. Long, supra, 169 Ala. at 340, 53 So. at 911. Such is not the case here. In the performance of his assigned job, the plaintiff Cole mounted the ladder as impliedly directed by the government's agents and because of the government's negligence sustained injury. There is no evidence that it could have been done in a safer way but was done in the necessary and usual manner with the equipment available. Such conduct does not constitute contributory negligence barring recovery even though he was aware of the ladder's condition from prior use.

(c) As to damages, the plaintiff sought recovery for pain and suffering, medical expense after release, and permanent loss of earning capacity. While the record reveals private medical treatment, no proof was offered as to reasonable and necessary expense other than $42.00 to Dr. J. L. Worthy. This is not to infer that the injury was minimal as most of the medical procedures were performed by Major Scott at Maxwell prior to Cole's release. All in all, the Court fixes the total damages at Five Thousand, Five Hundred Forty-two Dollars ($5,542.00).

In accordance with 28 U.S.C.A. 2678, attorneys fees are fixed at 20% to be paid out of such recovery. This award is determined by the court in the light of

the time spent in conferences, depositions, motions and pre-trial as well as the skill with which the actual trial was conducted.

It is so ordered.