162 So. 685

**SOUTHERN RY. CO. v. DEAR.**

7 Div. 136.

Court of Appeals of Alabama.
June 28, 1935.

Merrill, Jones & Whiteside, of Anniston, for appellee.

Knox, Acker, Sterne & Liles, of Anniston, for appellant.

**BRICKEN, Presiding Judge.**

W. H. Dear, plaintiff, brought his action for personal injury and property damage against appellant to recover the sum of $2,500, alleged to be due as damages sustained by plaintiff, as the proximate result of the negligent operation of a passenger train by the servants, agents, or employees of the defendant, while acting within the line and scope of their employment, at a public highway crossing near Weaver Station in said county on February 18, 1934. The trial resulted in a judgment for plaintiff for the sum of $500, and costs of said suit. The defendant filed its motion for a new trial, which motion was overruled. This appeal is from the judgment rendered, and also from the action of the court in denying and overruling the motion for a new trial.

Twelve assignments of errors are noted by appellant upon the record. Three of said assignments of error are briefed, argued, and insisted upon, and they are as follows:

(1) The trial court should have charged the jury that their verdict should be for the defendant; (2) that the trial court should have charged the jury that they could not find a verdict for the plaintiff; and (3) the trial court should have granted defendant's motion for a new trial.

The complaint contained one count only, and claimed damages for personal injuries and the destruction of an automobile, accruing to plaintiff as the proximate result of simple negligence upon the part of the servants, agents, or employees of the defendant, while acting within the line and scope of their employment. The defendant filed demurrers to the complaint and upon judgment being rendered, overruling and denying the demurrers, the defendant and plaintiff both obtained leave of the trial court to plead in short by consent with leave to either party to introduce in evidence any matter that might be introduced if properly pleaded.

The undisputed evidence disclosed that there was a collision between defendant's passenger train, which was running from a southern direction in a northern direction, and plaintiff's automobile, which was then being driven by plaintiff from west to east, and that this collision occurred at a point where the public highway, along which plaintiff was driving, crossed defendant's railroad track. Plaintiff testified that when he approached the place where said highway crossed said railroad he stopped his automobile at a point in the highway about twenty steps (60 feet) from said crossing and looked and listened; that he saw no train and did not hear any train; that he looked in both directions from which a train might be approaching and failing to see or hear anything, indicating the dangerous proximity of an on-coming train, he undertook 'to cross the railroad track by driving very slowly ahead 'and while so approaching the railroad track he looked to the north, only, for the approach of any train; that when he reached the railroad crossing he attempted to cross and when the front wheels of his automobile were about midway between the steel rails of the main track he first observed defendant's passenger train, which was then about 25 or 30 feet away, and running at a speed of about 35 or 40 miles per hour, approaching from the south, and that he then stopped his car and attempted to back his car, which then appeared to be the safest way to him to get off the track, but that he failed by a second of time to escape; that his car was struck by the locomotive engine and thrown from the track and highway into a ditch and that it landed in the ditch about 25 or 30 feet from where it was struck by the locomotive, bottom side up; that in the collision his car was wrecked and he was cut across the head and hand and received bruises all over his body. On cross-examination the plaintiff testified: "From the point where I stopped my car and started up and ran at a speed of four miles an hour toward the railroad track, with the front wheels of my car facing east, that threw the entire railroad track south to my right. I looked both ways and there was a cut there and an "S" curve in the cut and I looked to the right. After I turned, facing the railroad, I did not look to my right. At any point after I stopped at the stop law sign, if I had looked to the right I probably could have seen the train, but I didn't look that way, I looked the other way to my left."

That portion of the testimony of plaintiff last quoted above tends to show that

plaintiff was guilty of negligence in not looking to the right as he slowly approached the railroad crossing, when the exercise of his sense of vision, in discharge of the duty imposed upon him by the law, would probably have disclosed the on-coming train to his vision when he could have stopped in time to avoid the danger. Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822; Seaboard Air Line Ry. Co. v. Lowe, 223 Ala. 542, 137 So. 448; Southern Ry. Co. v. Randle, 221 Ala. 435, 128 So. 894; Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 212, 27 So. 1006.

It, therefore, appears that the plaintiff was not entitled to recover damages against the defendant because of the contributory negligence of plaintiff unless the servants, agents, or employees of the defendant, while acting in the line and scope of .their employment in the operation of the passenger train in question, became aware of the peril of plaintiff in time to avoid striking him, by the proper use of preventative means at their command, and negligently failed to resort to such means, to conserve his safety, provided plaintiff himself was free from negligence after becoming conscious of his danger, as the jury was instructed in written charges Nos. 15, 17, and 25, requested by defendant.

█ The complaint charges simple negligence only, but, nevertheless, it was sufficient to authorize proof of and a recovery for subsequent negligence. Louisville & N. R. Co. v. Calvert, Adm'r, 172 Ala. 597, 55 So. 812, 814.

The testimony introduced upon the trial of this case establishes the following facts: Defendant's railroad track extended southward in a straight line from the highway crossing in question for a distance of from 1 to 1½ miles; the public highway in which the plaintiff was driving his automobile ran parallel to the railroad track on the west side thereof, and about 30 feet therefrom for a distance of about 435 feet when it turned practically at right angles and continued across the railroad track; the position of the engineer was on the right hand side of the engine; the public highway up to the point where the same crossed the railroad track was on the left hand side of the railroad track to a person traveling from south to north, the direction in which the train was running; according to the testimony of the engineer it was his duty to stay in his position on the engine, in one place and watch all the time. The engineer testified, among other things, as follows: "From where I was on the engine, while the plaintiff was traveling this 435 feet parallel with the track up to the crossing, looking out on the right side of the engine I could not see him."

Upon his initial direct examination, the engineer testified as follows:

"I was going north into Weaver and blew for the crossing this side of Weaver, at the station board, the crossing board down there. There is a crossing sign to tell you where to blow the crossing signal. When I got to the crossing board, I blew the crossing signal, two long and two short blasts, and then I blew a long time for the station. I blew a long blow for the station immediately after the crossing signal. After I got through blowing the crossing signal, I passed the station board and I blew the long blow for the station and the conductor signaled for me to stop, and I started to answer that and the fireman halloaed for me to look out, there was an automobile, and I blew what we called a cattle alarm. My position was on the right hand side of the engine and in going north that would put me on the east side of the engine and of course I could not see what was happening on the west side. The first I knew of an automobile was when the fireman halloaed and told me that there was an automobile coming onto the crossing."

The engineer further testified, on cross-examination, as follows:

"I gave the crossing blow 200 yards from the crossing and the station blow about 100 yards from the crossing."

It is to be observed that when the engineer gave the station blow the conductor signaled him to stop, and that before he could answer this signal the fireman halloaed for me to look out, there was an automobile, and I blew what we called a cattle alarm."

Although the engineer testified on his direct examination that the fireman called out to him that the automobile was coming onto the track, shortly after the station signal was blown, and which signal was sounded when the engine was about 100 yards from the crossing, he further testified on cross-examination as follows:

"I never did see this man on the west side of the track. I never saw him until after the accident. The first I knew that any accident was likely to occur was when the fireman told me there was a man on the track, and then I put the brakes on and gave a little short blast of the whistle. I was right at the crossing when the fireman told me that. The train ran about four car lengths beyond the crossing. I stopped the train with the rear end of the train about one car north of the crossing. Coaches are different lengths, from sixty to eighty feet. I don't know what length these cars were. I could see on both sides of the crossing until I got up there. I don't know how close I would have to get to the crossing before the engine would cut off my view from both sides; thirty or forty feet; 30 or 40 feet from the crossing I could see on both sides of the track. I couldn't see any automobile approaching."

In the Calvert Case, supra, it was said: "There was proof that the right of way was clear, and it was not only a question for the jury, but is a matter of common knowledge, that if one looks a considerable distance ahead, though the eye is aimed at a certain point or object, that the sight will take in to some extent the surrounding or adjacent space, and it was open to the jury to determine that the engineer discovered the horse and buggy approaching the crossing and before the collision."

Ranay Powell, who was a passenger on the train that struck plaintiff's automobile, testified that he did not hear the train blow after it left Blue Mountain until after the accident; that he did not hear the whistle blow until about the time the accident occurred; that the engineer did not blow the whistle before he reached the crossing.

■ It, therefore, appears that there was evidence to be considered by the jury to enable them to determine whether or not the engineer discovered plaintiff's peril in time to have averted striking him by resorting to preventive means, and whether or not the failure of the engineer to resort to such means was the proximate cause of plaintiff's injury and damage. Under the evidence the jury could have inferred that the engineer discovered the perilous position of the plaintiff upon defendant's railroad track in time to slacken or check the speed of the train, so as to enable the automobile to clear the track before the train reached the crossing.

There was proof from which the jury could infer subsequent negligence as the proximate cause of plaintiff's injury and damage, and the defendant was, therefore, not entitled to the general charge requested in writing as insisted upon by the defendant in assignments of error 2 and 3, respectively. Mobile Light & R. Co. v. Gadik, 211 Ala. 582, 584, 100 So. 837, and cases cited.

The next question presented is the assignment which involves and questions the judgment of the court below, refusing and denying the defendant's motion for a new trial.

■■ The rules of granting or refusing a new trial upon the grounds that the verdict of the jury is contrary to the evidence and, also, to the weight of the evidence, are too well understood to need any extended consideration by this court. The power of a court to set aside a verdict is inherent in the court to which the verdict is returned. The exercise of this power is essential to prevent irreparable injustice in every case where the verdict is wholly wrong, and is the result of caprice, forgetfulness, or an intentional disregard of the testimony, or where the verdict springs from bias or prejudice on the part of juries, which sometimes may occur. In acting upon motions for a new trial based upon the want of evidence, or the sufficiency of evidence, or the weight of evidence, courts should always bear in mind and be regardful of the fact that it is the exclusive province of a jury to determine the credibility of witnesses and to weigh the testimony, and that the power to find the facts from the testimony is vested solely in the jury to which that testimony is presented. The verdict of a jury should be set aside only when it positively appears that the substantial ends of justice require that such verdict should be set aside and a new trial be granted.

■■ The presiding judge of the court below refused to grant a new trial in this case, and the correctness of the verdict of the jury was thereby strengthened. Where there is evidence on both sides, or where there is evidence to support the verdict, that verdict should not be set aside, because the verdict does not correspond with the opinion of the court as to the weight of the testimony or the mere preponderance, of the evidence. It is well established in this state that the decision of a

trial court, refusing to grant a new trial on the grounds of the insufficiency of the evidence, or that the verdict is contrary to the evidence, or the weight of the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court it is wrong and unjust.

This court has carefully examined the evidence, as presented by this record, and after such examination we cannot say that the evidence set out in the record was so overwhelmingly in favor of the defendant as that the trial court would have been authorized and justified in saying that the verdict of the jury in this case was wrong and unjust.

It must be remembered that upon the trial of this case in the court below the judge of that court charged the jury in substance that if the plaintiff was guilty of negligence in attempting to cross the railroad track, which proximately contributed to the injuries and damages the plaintiff sustained, in that event, the plaintiff could not recover. Under the charge of the trial court, the case would have gone to the jury upon the sole issue as to whether or not the injuries and damages sustained by plaintiff resulted solely from the initial negligence of the agents, servants, or employees of the defendant in the operation of the train which struck plaintiff's automobile. The defendant was not content for the case to be decided upon this issue, but requested the trial court to give written charges 15, 17, and 25, respectively, each of which presented the doctrine of subsequent negligence. But for these special charges that question would not have been presented to the jury in this case, although the jury should have been instructed by the trial court in its oral charge with reference to the law of subsequent negligence, which we think was fairly presented to the jury under the evidence as disclosed by this record.

The trial court did not err in overruling and denying defendant's motion for a new trial. Nashville, C. & St. L. Ry. v. Crosby, 194 Ala. 338, 70 So. 7; Jackson Lumber Co. v. Trammell, 199 Ala. 536, 74 So. 469; Hatfield v. Riley, 199 Ala. 388, 74 So. 380; Dees v. Lindsey Mill Co., 210 Ala. 183, 97 So. 647.

Affirmed.