## ATLANTIC COAST LINE R. CO. v. FREEMAN.

### No. 13519.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1951.

Rehearing Denied Jan. 18, 1952.

218

John S. Foster, Peyton D. Bibb, Birmingham, Ala., for appellant.

G. Ernest Jones, Jr., Roderick Beddow, Birmingham, Ala., for appellee.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

Appellee, as administratrix of her husband's estate, recovered judgment below against the appellant railroad awarding her damages for the husband's wrongful death, which occurred when an automobile driven by one Brock King, in which deceased was riding as a guest, collided with a train alleged to have been negligently operated by appellant.

The collision occurred about 8:22 a. m. on January 14, 1950, a foggy, misty morning, with light drizzling rain, where appellant's single main line track intersects a state highway at right angles near Powderly, Alabama, just outside the southerly city limits of Birmingham. The train was about 10 minutes behind schedule. The crossing is in semi-rural territory, but near several populous areas. The highway, which connects the towns of Midfield and Fairfield, is paved 21 feet wide and carries reasonably heavy traffic. At the crossing, there is a conventional crossarm crossing sign, plainly visible to a car approaching from the north, but no other protective devices.

The automobile in which deceased was riding approached the crossing from the north, traveling south at a speed of 25 to 35 miles per hour. The train approached from the east, or left side of the automobile, at a speed of about 45 miles per hour. As it approached the crossing, the automobile did not reduce its speed. Although the engineer testified he applied the emergency brakes as soon as he discovered the oncoming automobile, the train's speed was reduced very little before the collision. The automobile had almost cleared the crossing when it was struck on its left rear by the left pilot step on the front of the locomotive. After striking the automobile, the engine became uncoupled from the cars, apparently as a result of the impact, and traveled about 600 feet beyond the crossing before stopping.

The approaches to the crossing of both highway and railroad were straight. To one looking straight ahead down the highway, or straight down the railroad track, there is a clear view of the crossing itself from a substantial distance away. From the east, however, the railroad track approaches the crossing through a shallow "cut," on the sides of which are low banks. On top of these banks, and in the area to the north and east of the crossing, there were trees and rather dense weeds and other growth, so that an automobile driver approaching the crossing from the north would not have a clear view of a train approaching from the east, nor would the engineer of the train have a clear view of the approaching automobile, until train and automobile were quite close to the crossing. Even in winter, with foliage greatly reduced, the trunks of the trees and the stems of thickly grown weeds and bushes obscure the view to the northeast of the crossing, across which area the engineer and driver of the car would have to look in order to see each other a substantial distance back from the crossing.

The engineer testified that he had a clear view of the crossing straight down the track from a quarter of a mile or more away, and started blowing a crossing signal and turned on the automatic bell ringer at about that point, continuing the signals until he reached the crossing. He was corroborated by several witnesses as to the crossing signals, but there was testimony to the contrary. The driver of a car following close behind the car involved in the collision heard the whistle, and safely stopped his car before reaching the crossing. The engineer further testified that he did not see the car involved in the collision until the car was between 50 and 75 feet,

and the locomotive between 75 and 100 feet, from the crossing, at which time he applied the emergency brakes and did all in his power to stop the train. His failure to see the car earlier may have been due to the obstructing vegetation to the northeast of the crossing.

The cause was submitted to a jury, which found for plaintiff. Asserting that the negligence of the driver of the automobile, Brock King, was the sole proximate cause of the collision, appellant contends that its motion for a directed verdict, or in the alternative its motion for a new trial, should have been granted, and that denial of these motions was error.

■■ It was of course the duty of travelers on the highway to exercise reasonable care for their own safety. There is no charge that the deceased himself was guilty of contributory negligence. He was a guest, with no control over the car. Nor is the concurrent negligence, if any, of the driver of the car attributable to him. Miller v. Union Pac. R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285. Of course, if the negligence of the driver of the automobile was the sole proximate cause of the collision, plaintiff could not recover from the railroad company.

■■ It was also the duty of the railroad company to exercise reasonable care for the safety of travelers on the highway, and to have its train under control appropriate to the circumstances involved. Weatherly v. Nashville, C. & St. L. Ry., 166 Ala. 575, 51 So. 959; Atlantic Coast L. v. Jackson, 221 Ala. 646, 130 So. 388; Davis v. Smitherman, 209 Ala. 244, 96 So. 208. In determining whether or not the railroad company performed that duty, it is appropriate to consider, amongst other things, the character and location of the crossing; the extent of its use by the public; the speed of the train; the distance traveled by the train before stopping after discovering plaintiff's peril; whether or not a crossing signal was given in compliance with Ala. Code 1940, Title 48, Sec. 170; the nature and extent of the obstructions to the view of a traveler on the highway, and to the engineer of the train, approaching the crossing in the manner here involved;

the extent to which existing weather conditions may have reduced visibility or affected the slowing of the train upon discovery of deceased's position of peril; the alertness of the engineer in discovering deceased's peril and in stopping the train; the condition of traffic on the highway; the fact that of other persons in the vicinity some heard the signals but some did not; and that another traveler heard them and safely stopped his car. These and other matters which might be appropriately considered upon the question of the railroad's negligence *vel non,* are typical matters for jury appraisal. The engineer testified that he did not discover the deceased's peril in time to avoid the fatal collision. But the jury might have inferred from the circumstances that he did, or that he would have discovered it had he exercised due care. Action of the engineer a split second sooner would have averted the collision. Louisville & Nashville Ry. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877, 880; Central of Ga. Ry. Co. v. Motherwell, 227 Ala. 300, 149 So. 820; Southern Ry. Co. v. Dear, 26 Ala. App. 508, 162 So. 685.

■ It can not be said as a matter of law that the negligence of the driver of the car was the sole proximate cause of the collision, nor that the defendant was free from negligence. The evidence on these questions is conflicting. Reasonable minds might differ thereon. There is sufficient evidence, if believed, to support the jury's finding that the defendant was guilty of negligence.

■■ Even if the collision was caused by the concurring negligence of the defendant and of the driver of the car, the defendant is liable for injuries to a non-negligent guest in the car to the same extent as though the damage had been caused by defendant's negligence alone. It is no defense for a wrongdoer that a third party shared the guilt of the same wrongful act, nor can such wrongdoer escape liability for damage he has caused on the ground that the wrongful act of a third party contributed to the injury. As there is credible evidence to support a finding of negligence on the part of the defendant, the trial court was correct in submitting the matter to the jury

220

and in denying the motion for new trial. Miller v. Union Pac. R. Co., 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285; Alabama Great Southern R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305; Alabama Great Southern R. Co. v. Bolton, 242 Ala. 562, 7 So.2d 296; Southern Ry. Co. v. Sherrill, 232 Ala. 184, 167 So. 731; Atlantic Coast Line v. Brackin, 248 Ala. 459, 28 So.2d 193; Central of Ga. Ry. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Pollard v. Nicholls, 5 Cir., 99 F.2d 955.

Affirmed.