**NATIONAL RAILROAD PASSENGER CORPORATION, ("AMTRAK"),**
Plaintiff,

v.

**H & P, INCORPORATED,**
et al., Defendants.

Civil Action No. CV–96–D–122–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 5, 1996.

Julia J. Weller, Robison and Belser, Montgomery, AL, for Plaintiff.

Steven A. Higgins, Nix, Holtsford and Vercelli, Montgomery, AL, for Defendants.

## OPINION

VARNER, District Judge.

This cause is now before the Court on Plaintiff's Motion for Summary Judgment filed herein on August 5, 1996, along with supporting briefs and materials; and on Defendants' opposition thereto filed herein on August 22, 1996, along with supporting briefs and materials; and on Plaintiff's Motion to Strike and Objection to the Affidavit of Tony Ray Frazier filed herein on August 30, 1996; and on Defendants' opposition thereto filed herein on September 19, 1996.

Before proceeding with a discussion of the undisputed facts, the Court must first determine the Plaintiff's Motion to Strike and Objection to the Affidavit of Tony Ray Frazier. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

■ The first portion of Tony Ray Frazier's ("Frazier") affidavit to which the Plaintiff objects and moves to strike states: "It is my opinion that the accident was caused by the obstructed view available at the railroad crossing to the south and the manner in which the Amtrak train was being operated prior to and at the time of the accident." Opp. Brief to Amtrak's Motion for Summ. Judgm't, Exh. A, Aff. of Tony Ray Frazier. As a general rule, opinion testimony by a lay witness is inadmissible. Fed.R.Evid. 701. Because this testimony would not be admissible in evidence, the Plaintiff's motion to strike this portion of Frazier's affidavit is due to be **GRANTED;** accordingly, Plaintiff's objection to this portion is due to be **SUSTAINED.**

■ The second portion of Frazier's affidavit to which the Plaintiff objects and moves to strike states: "There was vegetation at the crossing which made it difficult to see down the entire length of the track." Aff. of Tony Ray Frazier. Frazier states that he stopped, looked, and listened within a few feet of the track, saw or heard no train, and drove his truck onto the track. The problem with this part of Frazier's affidavit is that it appears to be such as, in its disputed sense, would not be believable to a reasonable juror. Other witnesses do not testify to obstruction of view by vegetation. A photograph of the scene, properly identified, taken on the day of the accident and not questioned by Frazier or any other witness, demonstrates clearly that no such obstruction to view existed when the picture was taken. The picture itself demonstrates a wide shouldered, built-up railroad right-of-way along which one who stopped and looked within 20 feet of the track could obviously have observed northbound rail traffic for a great distance down the track. Additionally, J.H. Driggers, an Alabama State Trooper who made an affidavit, observed the scene shortly after the accident, walked up and down the road from whence Frazier stated he had come, and reported that there was insofar as he could see no obstruction to visibility along the track. Plaintiff's motion to strike this portion of Frazier's affidavit is due to be **GRANTED;** accordingly, Plaintiff's objection to this portion is due to be **SUSTAINED.**

■ Third, the Plaintiff objects to and moves to strike Frazier's statement that "[a]s my tractor-trailer began to cross the tracks, I heard a train horn and saw a train approach from my left at an extremely high rate of speed." Aff. of Tony Ray Frazier. Frazier's statement that he saw the train approach is made on personal knowledge and would be admissible in evidence. However, Frazier failed to present a factual basis for his opinion that the train was moving "at an extremely high rate of speed." Because such opinion testimony, unsupported by facts, would not be admissible in evidence, the clause, "at an extremely high rate of speed," should be stricken. Admittedly, Frazier did not yield the right-of-way to oncoming traffic as required by law, as hereinafter fully discussed. Thus, the Plaintiff's motion to strike this third statement is due to be **GRANTED**

in part and **DENIED** in part; accordingly, the Plaintiff's objection to this third statement is due to be **SUSTAINED** in part and **OVERRULED** in part.

█ Finally, the Plaintiff objects to and moves to strike Frazier's statement that "[i]t is my understanding that there have been other accidents or near-misses at this crossing." Aff. of Tony Ray Frazier. This statement is opinion testimony without a basis in fact. Furthermore, Frazier makes no showing that this statement is based on personal knowledge. The statement is hearsay, and thus is not admissible in evidence. Plaintiff's motion to strike this portion of the affidavit is due to be **GRANTED**; accordingly, Plaintiff's objection to this portion is due to be **SUSTAINED**.

### I. Background

In deciding this Motion for Summary Judgment, the court has carefully examined all submissions by the parties and has construed them in a light most favorable to the defendant.

On January 31, 1994, Frazier was operating a tractor-trailer for his employer H & P, Inc. ("H & P"). As he was traveling west across a railroad crossing on Prattville Junction Road in Elmore County, Alabama, Frazier was struck by an Amtrak train which was traveling north. The accident occurred at approximately 11:50 a.m. on a clear day with no fog, rain, or smoke.

Amtrak filed a complaint on January 23, 1996, against H & P and Frazier. Amtrak alleges that Frazier and H & P negligently or wantonly operated the tractor trailer and caused damage to Amtrak's train and engine resulting in loss of use and repair and replacement costs. Amtrak also alleges that H & P negligently or wantonly entrusted the tractor trailer to Frazier and caused said damages to Amtrak. Finally, Amtrak alleges that H & P negligently or wantonly failed to maintain and/or repair the tractor trailer and caused damages to Amtrak.

Frazier answered the complaint and filed counterclaims on February 26, 1996. Frazier asserts that Amtrak, and its employees, negligently or wantonly operated the train and caused damage to Frazier in the form of personal injury and emotional distress, expenses for repair and replacement of the tractor trailer, and loss of use of the tractor trailer. Frazier also asserts that Amtrak negligently or wantonly maintained the railroad crossing grade and the surrounding area thereby creating or allowing an unsafe condition, an obstructed vision of the track due to vegetation, and inadequate safety and warning devices.

On August 5, 1996, Amtrak moved for summary judgment as to liability on all counts of its complaint and as to Frazier's counterclaims.

### II. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–2553.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–2514, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. Analysis

#### A. Defendant's Counterclaims

##### 1. Negligent or Wanton Operation of the Train

The Defendant/Counterclaimant, Frazier, alleges in Counts I and II of his Counterclaim that Amtrak negligently or wantonly operated the train so as to allow it to strike the tractor-trailer which Frazier was operating. As a basis for this claim, Frazier asserts that as he approached the railroad crossing on Prattville Junction Road, he came to a complete stop at the stop sign just before the tracks. It was daytime, and there was no fog, rain, or smoke which would have obscured his vision. Frazier asserts that the driver's-side window of the tractor-trailer was rolled down, and that he checked the track in both directions before beginning to cross it. Frazier asserts that he did not see the train or hear any horn or whistle before beginning to cross the track. As Frazier started across the track, he then saw the train fast approaching and heard the train's horn. Frazier also asserts that the operators of the train failed to react in an appropriate manner upon seeing his truck on the crossing. He asserts that the operators waited too long to place the train in emergency braking and thereby breached their duty to stop or slow the train to avoid him.

##### a. Federal Preemption

■ Amtrak argues that Frazier's claims of negligent and wanton operation of the train are preempted by federal law. The Secretary of Transportation issues federal regulations which set the maximum operating speeds of trains which are allowable on certain classes of tracks. *CSX Trans., Inc. v. Easterwood,* 507 U.S. 658, 673, 113 S.Ct. 1732, 1742, 123 L.Ed.2d 387 (1993); *see* 49 C.F.R. § 213.9(a). These regulations not only set the maximum operating speeds of trains, but also preclude claims under state tort law that a particular train was traveling too fast if that train was traveling under the maximum operating speed. *Easterwood,* 507 U.S. at 674, 113 S.Ct. at 1742. While a train's speed can not be the basis for an action under state tort law, an action may still be brought based upon other alleged negligent actions in the operation of the train.

The Plaintiff/Counterdefendant, Amtrak, produced evidence showing that the maximum federal operating speed on the particular track at issue in this case was 79 m.p.h. Amtrak also produced evidence showing that the train was traveling at a rate of 55 m.p.h. just prior to being placed into emergency braking by the train's operator in an attempt to avoid a collision with Frazier. Because the train was not exceeding the maximum operating speed, Frazier's claim of negligent and wanton operation of the train is preempted to the extent that the claim is based on the speed of the train at the time of or just prior to the accident.

##### b. Analysis of the Claim

Absent Frazier's claim that the train was operated at an excessive speed, Frazier still asserts, basically, that the operators of the train waited too long before blowing the train's whistle or horn and waited too long to apply the train's emergency braking. Frazier alleges that the whistle or horn was not sounded until after he was on the track and the train was upon him. He also asserts that the operators of the train breached a duty to him to slow or stop the train in an effort to avoid the collision.

■ Under Alabama law, "[t]he basic elements of any negligence action are: 1) an obligation owed by the defendant to the plaintiff, 2) a breach of the standard of care applicable to that obligation, 3) causation, and 4) damage." *Hilliard v. Huntsville Elec. Util. Bd.,* 599 So.2d 1108, 1110 (Ala.

1992). Frazier's claim of negligence breaks down into two types of negligence. First, Frazier asserts that the operators of the train were negligent in failing to warn him of the approaching train by blowing the whistle or horn. Second, Frazier claims that the train operators were negligent subsequent to his proceeding onto the track by failing to stop or slow the train in time to avoid or lessen the impact. When the operators of a train have actual knowledge of a peril or dangerous situation at an upcoming crossing, "subsequent negligence consists of the inadvertent failure to use all the means at hand known to skillful engineers, in their proper order and effectiveness, to avert the injury...." *Southern Railway Co. v. Diffley*, 228 Ala. 490, 153 So. 746, 748 (1934).

Frazier also claims that the operators of the train acted wantonly. "[T]o constitute wantonness, the failure to use [all the means known to skillful engineers] in their proper order and effectiveness must be accompanied by a conscious knowledge of the consequences and a reckless disregard thereof." *Diffley*, 153 So. at 748. The Supreme Court of Alabama has stated the relationship between negligent and wanton conduct as follows:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater degree of negligence as, for instance, gross negligence.

*Lynn Strickland Sales and Service, Inc. v. Aero–Lane Fabricators*, 510 So.2d 142, 145 (Ala.1987). A person can not be found to have acted wantonly and negligently as to the same act or omission, because a finding of wanton behavior includes a finding of some mental action, whereas the element of mental action is absent in a finding of negligence. *Lynn Strickland*, 510 So.2d at 146.

It is the law in Alabama that the operator of a train "must blow the horn or whistle or ring the bell ... [a]t least one fourth of a mile before reaching any public road crossing ... and continue with such signal at short intervals, until such crossing ... has been passed." Ala.Code § 37–2–81. The train operator "must also, on perceiving any obstruction on the track, use all means within power, known to skillful engineers, such as applying brakes, in order to stop the train." § 37–2–81. These statutory duties do not apply to Amtrak. *See* § 37–2–2; *Borden v. CSX Trans., Inc.*, 843 F.Supp. 1410, 1418 n. 4 (M.D.Ala.1993). Nonetheless, Amtrak still has a duty to exercise ordinary care in the operation of its trains. *Borden*, 843 F.Supp. at 1418 n. 4.

Ray Patrick Estes ("Estes") was the operator of the train which struck Frazier's truck. Estes is an Assistant Engineer for Amtrak, and he testified by affidavit that as he was approaching the crossing at Prattville Junction Road, he had the train's headlights on bright beam. He also testified that as he was approaching the crossing, he was blowing the train's whistle and ringing its bells. Moreover, Estes testified that he was ringing the bells and blowing the whistle at the time that Frazier approached the crossing. He also states that he placed the train in emergency in an attempt to avoid a collision with Frazier, because Frazier failed to stop at the crossing.[1]

Estes' testimony is backed up by an event recorder which was located on the Amtrak train at the time of the accident. The data which was recorded by the event recorder at the time of and just prior to the collision was interpreted by Dilip M. Patel, P.E., who is Amtrak's representative in working with the National Transportation Safety Board regarding event recorders. The recorder

---

**1.** Frazier disputes Estes testimony that he did not stop at the crossing. Frazier asserts that he did stop, look, and listen at the crossing, and upon hearing and seeing no train, continued across the track in the path of the Amtrak train. For the purpose of deciding this motion for summary judgment, the Court will assume that Frazier did initially stop at the crossing before proceeding.

showed that the train's whistle was blowing for about nineteen seconds prior to the train being placed in emergency braking. The train traveled about 1,878 feet during that nineteen seconds.

Amtrak has met its burden of showing that it was not negligent or wanton in operating the train. The burden now shifts to Frazier to show substantial evidence that Amtrak was negligent or wanton. Frazier, testifying through an affidavit, states that he stopped at the crossing before proceeding across it. He says that his driver-side window was down, and he did not see or hear a train approaching from either direction. He testified that there was vegetation present at the crossing which made it difficult to see down the track. As he proceeded across the track, he then heard the train's whistle and saw the train. No other evidence was submitted as to the claims of negligent or wanton operation of the train. Thus, Frazier has not presented substantial evidence that Estes was negligent or wanton in his duty to stop or slow the train in an effort to avoid the collision.[2]

As to Frazier's claim that Amtrak wantonly or negligently failed to warn of the approaching train by sounding its whistle, Frazier states that he stopped, looked, and listened just prior to crossing the track and he did not see a train or hear the whistle until he was on the track. As to the wanton operation claim, Frazier produced no evidence tending to show that Estes acted with a reckless indifference to the consequences of his actions or that he consciously or intentionally acted in a wrongful manner. As to the negligent operation claim, Frazier presented no evidence other than his statements that have been stricken.

The Supreme Court of Alabama has stated that a "plaintiff's testimony that he stopped, looked, and listened, in the face of the circumstances that if he had stopped, looked, and listened he could have either heard or seen the train which was moving toward the crossing and near thereto when the plaintiff drove his automobile on the railroad track, does not constitute a conflict in the evidence." *Atlantic Coast Line Railroad Co. v. Barganier*, 258 Ala. 94, 101, 61 So.2d 35, 42 (1952); *see also Atlantic Coast Line Railroad Co. v. Griffith*, 40 Ala.App. 364, 368, 113 So.2d 788, 792 (1959); *Southern Railway Co. v. Terry*, 40 Ala.App. 186, 190, 109 So.2d 913, 916 (1958), *reversed on other grounds*, 268 Ala. 510, 109 So.2d 919 (1959).

In *Terry*, the driver of a tractor testified that he stopped the tractor five to ten feet from the track, looked in both directions, and did not hear or see a train. He testified that due to an oak tree and some parked tractors to his left, he could not see very far down the track. As he crossed the track, he was hit by a train coming from his left. One of the driver's witnesses also testified that he did not hear a train whistle or bell before the accident. The defendant produced photographs of the crossing which were taken the day after the accident. The photographs were taken at the same time of day as when the accident occurred, and the tractors to the left of the intersection were in the same position. The supreme court noted that the pictures revealed that had the driver stopped where he testified that he stopped, his vision down the track would not have been obscured by the oak tree or the tractors. The supreme court held that in view of the photographic evidence showing that the driver could have seen or heard an approaching train from his left, the driver's testimony that he did not see or hear an approaching train could not create a conflict in the evidence. *Terry*, 40 Ala.App. at 190, 109 So.2d at 916; *see also Griffith*, 40 Ala.App. at 368, 113 So.2d at 792 (driver's statement that he did not see or hear train did not create

---

**2.** Amtrak produced an affidavit of J.H. Driggers, an Alabama State Trooper, who was at the scene of the accident. Driggers testified that he measured the distance from the point of impact to the point of the train's final resting place. The distance was 550 feet. Frazier asserts that before Driggers arrived, the train was backed up several hundred feet, and therefore Driggers' measurement is not accurate. Whether the measurement is accurate is of no matter. There is no evidence that Driggers' measurement was used by Amtrak to calculate anything. Instead, Amtrak relied on the data from the event recorder and the testimony of Estes as to when he placed the train in emergency braking.

conflict in the evidence in view of photographs of the crossing).

In addition to the testimony by Estes that he sounded the horn and rang the bell while approaching the crossing at Prattville Junction Road and the evidence from the event recorder that the horn was blown for about nineteen seconds—during which the train traveled 1,878 feet—prior to the train being place in emergency braking, Amtrak produced photographs of the crossing. The photographs were taken by Roger Strange, a claims representative for CSX Transportation, Inc., immediately after the accident. The photos show that it was a very clear day. From the point where Frazier claims to have stopped, looked, and listened, he would have been able to easily see and hear an approaching train, and he would have been able to see and hear the train for more than an adequate distance to give him warning of its approach. There is absolutely no vegetation, contrary to Frazier's affidavit testimony, which would have obscured his vision of the track. Frazier's statement that he neither saw an approaching train, nor heard the train's whistle or bell, is not sufficient, given the photographic evidence to the contrary, to create a conflict in the evidence. Thus, Frazier failed to present substantial evidence that Amtrak negligently failed to warn of its approaching train.

For the foregoing reasons, summary judgment is due to be **GRANTED** to the Plaintiff/Counterdefendant on Frazier's claims of negligent and wanton operation of the train.

### 2. Negligent or Wanton Maintenance of the Railroad Crossing Grade and Surrounding Areas (Vision Obstructed by Vegetation)

In Count III of Frazier's Counterclaim, Frazier claims that Amtrak, its employees, and its agents negligently or wantonly maintained the railroad crossing grade at Prattville Junction Road in an unsafe condition. In Count IV, Frazier claims that Amtrak, its employees, and its agents negligently or wantonly maintained the crossing and surrounding areas in such a manner that the vision of crossing motorists was obstructed by vegetation. Other than the vegetation, Frazier

does not assert any other conditions of the crossing which were allegedly unsafe at the time of the accident. Thus, the Court will consider Counts III and IV together and will only consider whether the vegetation made the crossing unsafe. For several reasons discussed below, each of which individually would suffice, the court finds that summary judgment is proper as to Counts III and IV.

#### a. Federal Preemption

Under 49 C.F.R. § 213.37, railroad track owners must keep vegetation on or immediately adjacent to the tracks under control. On this issue, the Eleventh Circuit Court of Appeals has stated: "Because the Secretary [of Transportation] has chosen to regulate vegetation, Congress explicitly has preempted all state regulation in this area." *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548, 1554 (11th Cir.1991), *aff'd*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). However, because these regulations apply only to vegetation on, and immediately adjacent to, the railbed, states are free to regulate vegetation beyond the area contemplated by 49 C.F.R. § 213.37. *Easterwood*, 933 F.2d at 1548 (adopting *Missouri Pacific Railway Co. v. Railroad Comm. of Texas*, 833 F.2d 570 (5th Cir.1987)). Accordingly, Frazier's claims of negligence and wantonness relating to vegetation immediately on or adjacent to the railroad track are preempted, and summary judgment is due to be **GRANTED** to Amtrak on those claims.

#### b. No Cause of Action Under Alabama Law

Assuming that Frazier's claim of negligent or wanton maintenance is based on vegetation outside the area immediately adjacent to the track, there is no cause of action available under Alabama law. There is no cause of action under Alabama law for allowing excessive vegetation to grow on the railroad right-of-way, which obstructs a traveler's view of an approaching railroad crossing. *Alabama Great Southern Railroad Co. v. Johnston*, 281 Ala. 140, 145, 199 So.2d 840, 844 (1967). However, such excessive vegetation is a factor to be considered in determining whether the railroad company negligently operated its train. *Johnston*, 281 Ala. at

145, 199 So.2d at 844. While Frazier does not have an independent cause of action based on the vegetation, the Court has already discussed the alleged vegetation as a factor in the negligent and wanton operation claims. Thus, summary judgment is due to be **GRANTED** to Amtrak on Frazier's claims in Counts III and IV of his Counterclaim for negligent or wanton maintenance of the railroad crossing.

#### c. No Duty, No Breach, No Conscious, Intentional Wrongful Act or Omission

■ Even if Frazier's claims of negligent and wanton maintenance were not preempted and there was an independent cause of action under Alabama law, summary judgment would still be proper. Amtrak asserts that it has no duty to maintain the track or the area around it. Amtrak produced evidence that the track is owned and maintained by CSX Transportation, Inc. Furthermore, Amtrak does not employ any roadside maintenance personnel. Having produced evidence that an essential element of a claim of negligence is not present, the burden shifts to Frazier to show substantial evidence that Amtrak does indeed have a duty to maintain the track and the surrounding area. Frazier, however, produced no evidence which would show that Amtrak has such a duty. Nor did Frazier produce any evidence that CSX Transportation, Inc., is an agent of Amtrak for the purpose of roadside maintenance. Thus, summary judgment would be proper because Frazier failed to produce substantial evidence of an essential element of a claim of negligence.

■ If Amtrak had a duty to maintain the area around the track, that duty was not breached. As discussed above, the photographs which were taken immediately after the accident show no vegetation which would have obstructed Frazier's view. Moreover, as discussed above, Frazier's statement that he could not see the train because of any such vegetation is not enough, in light of the photograph, to create a genuine issue of fact. Thus, summary judgment would be proper because Frazier failed to produce substantial evidence of another essential element of a claim of negligence.

Finally, as to the wantonness claim, Frazier produced no evidence that Amtrak consciously or intentionally failed to maintain the track with a reckless indifference as to the consequences. Thus, summary judgment would also be proper on the wantonness claim.

#### 3. Negligent or Wanton Failure to Supply or Maintain Adequate Safety & Warning Devices

Frazier alleges in Count V of his Counterclaim that Amtrak, by and through its agents and employees, negligently or wantonly failed to supply or maintain adequate safety and warning devices. J.H. Driggers, an Alabama State Trooper, testified by affidavit that there were three warning signs present on Prattville Junction Road leading up to the railroad crossing. First, 232 feet from the track, there was a yellow and black railroad advance warning sign. Second, 14 feet from the track, there was a red Alabama stop sign. Third, 12 feet from the track, there was a railroad crossbuck sign. Dykes T. Rushing, an office engineer for the Alabama Department of Transportation, testified by affidavit that a Federal Aid Project Agreement for Project Number SRS–000S–(40) provided for the installation of these warning signs and stop signs and that Federal Aid Highway Funds were used to purchase and construct the signs.

#### a. Federal Preemption

Amtrak claims that Frazier's claims of negligent and wanton failure to supply or maintain adequate safety and warning devices are preempted by the Federal Railroad Safety Act, 45 U.S.C. §§ 421–447, and the regulations that implement that act. State tort law is preempted when the provisions of 23 C.F.R. §§ 646.214(b)(3) and (4) are applicable. *Easterwood*, 507 U.S. at 670, 113 S.Ct. at 1740–1741. "[Sections] 646.214(b)(3) and (4) displace state and private decision making authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed [sections] 646.214(b)(3) and (4) effectively set the terms under which

railroads are to participate in the improvements of crossings." *Id.*, 507 U.S. at 670, 113 S.Ct. at 1741. Section 646.214(b)(4) requires that any determination as to the type of warning devices to be installed at crossings where there are not multiple tracks or heavy traffic must be approved by the Secretary of Transportation. *Id.* at 671, 113 S.Ct. at 1741. Moreover, railroads are not responsible for the costs of these warning devices under section 646.214(b)(4). *Id.*, 507 U.S. at 670–672, 113 S.Ct. at 1741; see 23 C.F.R. § 646.210(b)(1). In summary, when federal funds are used to install warning devices, the Secretary of Transportation has made the determination as to which warning devices to install. *Id.*, 507 U.S. at 670–672, 113 S.Ct. at 1741. "The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which [the Counterclaimant] relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings." *Id.*, 507 U.S. at 671, 113 S.Ct. at 1741.

■ The *Easterwood* case did not deal with the failure to maintain warning devices which had already been installed, but rather with a claim for the absence of proper warning devices. *Michael v. Norfolk Southern Railway Co.*, 74 F.3d 271, 273 n. 3 (11th Cir.1996). Sections 646.214(b)(3) and (4) "deal with the design and installation of new warning devices, not the maintenance of those devices or the failure to warn the public of defective devices." *Michael*, 74 F.3d at 273. Thus, these federal regulations do not preempt state law claims for negligent maintenance of the warning devices or for failure to warn of defective devices. *Id.*

■ Amtrak has shown that the three warning signs were installed pursuant to a federal project and were paid for with federal funds. Thus, the Secretary of Transportation has already determined which warning devices are appropriate for the Prattville Junction Road crossing. To the extent that Frazier claims that additional warning devices were needed at this crossing, his claims are preempted. Thus, summary judgment is due to be **GRANTED** to Amtrak on Frazier's claims in Count V of his Counterclaim to the extent that he claims that new or additional warning devices were needed at the crossing.

#### b. No Duty

■ Frazier attempts to argue around the preemption defense by claiming that Amtrak failed to maintain the existing signs (i.e. failed to keep them in proper repair) and failed to warn that the existing signs were defective. *See Michael*, 74 F.3d at 273 (holding that these two types of claims are not preempted by the Federal Railroad Safety Act). There is absolutely no evidence that the three warning signs were not in proper repair. In fact, Frazier admits that the signs were effective in warning him that he needed to stop before crossing the track. Thus, Frazier is left with his claim that the existing signs were defective. It appears the Frazier is arguing that Amtrak should have installed a sign saying: "Warning: These signs are defective in that they do not adequately warn of the vegetation to the left of the road which obstructs the view of the track." Such a sign would in essence be a warning sign of the vegetation, not really a warning that the existing signs are defective. Thus, Frazier's claim, while not technically preempted, is a far stretch from what the *Michael* court had in mind when it held that claims for the negligent failure to warn of defective warning devices are not preempted.

Nonetheless, proceeding with the analysis, Amtrak asserts that it has no duty to maintain the warning signs at the Prattville Junction Road crossing. As with the above claims for negligent and wanton failure to maintain the crossing in a safe condition, Amtrak asserts that CSX Transportation, Inc., is the owner of the track and is responsible for maintaining the track. Amtrak states that it has no maintenance crews and no duty to maintain the warning signs at the crossing. As with the above claims, Frazier failed to produce any evidence that Amtrak was responsible for and had a duty to maintain the warning devices or warn of any defective devices. Frazier does not assert and produced no evidence showing that CSX Transportation, Inc., is the agent of Amtrak for purposes of such maintenance of warning.

Frazier failed to produce substantial evidence of the existence of a duty on the part of Amtrak, an essential element of a claim for negligence. Therefore, summary judgment is due to be **GRANTED** to Amtrak as to Frazier's claim of negligent failure to maintain the warning devices.

### c. No Breach

██ Even assuming that Amtrak had a duty to maintain or warn of defective warning devices at the Prattville Junction Road crossing, Amtrak did not breach that duty. Frazier asserts that the signs were defective because they did not warn of the vegetation to the left of the road which he claims blocked his view of the track. As previously discussed, the photographic evidence clearly and unequivocally shows that there is no vegetation which would have blocked Frazier's vision of the track. There is no duty to warn of that which does not exist. Frazier's statement that he did not see the train because of the vegetation is not sufficient to create a genuine issue of fact. Therefore, Frazier failed to present substantial evidence that Amtrak breached a duty, an essential element of a claim of negligence.

Moreover, Frazier presented no evidence that Amtrak consciously or intentionally failed to repair or warn of any defective warning devices. Nor did Frazier present any evidence that Amtrak was recklessly indifferent to the consequences of failing to maintain or warn of any defective warning devices. Thus, for the foregoing reasons, summary judgment is due to be **GRANTED** to Amtrak on Frazier's claims of negligent and wanton failure to maintain and/or warn of defective warning devices.

## B. Plaintiff's Claims

### 1. Negligent Operation of the Tractor–Trailer

Plaintiff Amtrak alleges in Count I of its Complaint that Frazier negligently operated the tractor-trailer truck allowing it to collide with the Amtrak train, thereby causing Amtrak to incur expenses for the loss of value and use of the train and repair and replacement expenses. In Count III of the Complaint, Amtrak alleges that H & P, as employer of Frazier, is liable for Frazier's negligent conduct.

Because the Plaintiff is moving for summary judgment, the Plaintiff must present evidence which would establish all of the elements of its claim. Once the Plaintiff has shown such evidence, in order to avoid summary judgment, the Defendant must produce substantial evidence which would create a genuine issue of fact as to any one element of the Plaintiff's claim or an affirmative defense. The evidence will be viewed in a light most favorable to the Defendants Frazier and H & P.

It is the law in Alabama that when a driver of a vehicle approaches a railroad crossing, and an approaching train is plainly visible[3] and dangerously close to the crossing, the driver shall stop the vehicle and "shall not proceed until he can do so safely." Ala.Code § 32–5A–150(a)(4). "[E]very driver of a vehicle approaching a stop sign shall stop.... After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or junction of roadways." Ala.Code § 32–5A–112(b).

██ These statutes seem to place the burden on Frazier to not only stop, look, and listen, but also to yield the right-of-way to the train which obviously was approaching the intersection on another roadway so closely as to constitute an immediate hazard while Frazier was moving across the intersection of the roadways. The accident would never have occurred had Frazier looked and listened sufficiently to note the noise and appearance of an approaching train. Obviously he did not yield the right-of-way as required

---

**3.** As has already been discussed, the photographic evidence clearly reveals that there was no obstruction, of vegetation or of any other kind, which would have prevented Frazier from seeing the oncoming Amtrak train. Frazier's statement that he did not see or hear the train prior to proceeding across the track is not sufficient to create a genuine issue of fact in light of the photographic evidence.

by the above statutes and his failure, therefore, was a proximate cause of the accident.

The law regarding a driver's duty to make sure a railroad crossing is safe after he has stopped, looked, and listened was summarized by the Court of Appeals of Alabama:

> "It is established by our decisions that one who is about to cross a railroad track must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track. The law thus imposes a continuing duty to see that the way is clear before attempting to cross." *Southern Railway Company v. Randle,* 221 Ala. 435, 128 So. 894, 897 (1930). *See also Hines v. Cooper,* 205 Ala. 70, 88 So. 133 (1920); *Southern Railway Company v. Summers,* 232 Ala. 417, 168 So. 179 (1936); *Atlantic Coast Line Railway Company v. Flowers,* 241 Ala. 446, 3 So.2d 21 (1941); *Southern Railway Company v. Dear,* 26 Ala.App. 508, 162 So. 685 (1935). "Where obstructions interfere with his view of the track, it is all the more his duty to stop, look, and listen at a point where he can see and hear, and, seeing and hearing, avoid an onrushing train." *Louisville & Nashville Railroad Company v. Turner,* 192 Ala. 392, 68 So. 277, 278 (1915); *Hines v. Cooper, supra.*

*Atlantic Coast Line Railroad Co. v. Griffith,* 40 Ala.App. 364, 368, 113 So.2d 788, 792 (1959).

Thus, Frazier had a duty, not only to stop, look, and listen, but also a continuing duty, once he began to proceed across the track to make sure he avoided any danger from an approaching train. If, as Frazier asserts, there was vegetation which prevented him from seeing very far down the track, his duty to avoid the danger from an approaching train was heightened. The evidence shows, viewed in a light most favorable to Frazier and H & P, that Frazier pulled up to and stopped at the stop sign which was some 14 feet from the track. It was daytime, just before noon, and it was a clear day, with no rain, smoke, or fog. Frazier claims to have looked and listened, and having neither heard nor seen a train approaching from either direction, he proceeded across the track. As he crossed the track, he then heard and saw the train. The train struck the trailer portion of Frazier's tractor-trailer, causing damage to both the train and the tractor-trailer.

It is evident from the photographs which were submitted by the Plaintiff that there was no vegetation or other obstruction which would have obscured the view of the approaching Amtrak train. The train was obviously close to the intersection, as it struck Frazier's truck before Frazier had time to completely cross the track. The Supreme Court of Alabama has held that a driver's

> ... testimony that he stopped, looked an listened, in the face of circumstances that if he had stopped, looked and listened he could have either heard or seen the train which was moving toward the crossing and near thereto when the [driver] drove his automobile on the railroad track, does not constitute a conflict in the evidence.

. . . . .

*Atlantic Coast Line Railroad Co. v. Barganier,* 258 Ala. 94, 101, 61 So.2d 35, 42 (1952); *Griffith,* 40 Ala.App. at 368, 113 So.2d at 791–792 (photographic evidence clearly revealed no obstruction of driver's sight or hearing); *Terry,* 40 Ala.App. at 190, 109 So.2d at 916 (photographic evidence clearly revealed no obstruction of driver's sight or hearing). Frazier's statement that he did not hear or see the approaching Amtrak train can not create a genuine issue of material fact in view of the photographs. "To give credence to his testimony overtaxes judicial credulity." *Barganier,* 258 Ala. at 102, 61 So.2d at 42.

There being no dispute as to the evidence, it is obvious that the train was plainly visible to Frazier and dangerously close to the Prattville Junction Road crossing. The Court finds that Frazier had a duty to wait until it was safe to cross the track, and that Frazier breached that duty by pulling out in front of the approaching Amtrak train when it was obviously not safe to do so. The court

further finds that this breach caused damage to the Amtrak train. Moreover, as fully discussed above, Amtrak was not negligent or wanton in any of its actions or conduct either before or after Frazier began to cross the track, and therefore, Amtrak was not contributorily negligent.

As to Amtrak's claim of negligent operation of the tractor-trailer against H & P, Inc., the Supreme Court of Alabama has stated:

> The liability of a corporation for the torts of its employees, whether agent or servant, is grounded upon the principle of "respondeat superior," not the principles of agency. The factual question to be determined is whether or not the act complained of was done, either by agent or servant, while acting within the line and scope of his employment. The corporation or principal may be liable in tort for the acts of its servants or agents done within the scope of employment, real or apparent, even though it did not authorize or ratify such acts or even expressly forbade them.
>
> ... To recover for damages for injuries sustained in an automobile accident against the driver's employer upon a theory of respondeat superior, it is incumbent upon plaintiff to prove that the collision occurred while the driver was within the scope of his employment, and happened while he was in the accomplishment of objectives within the line of his duties.

*Pryor v. Brown & Root USA, Inc.*, 674 So.2d 45, 48 (Ala.1995) (internal citations and quotations omitted).

 Amtrak asserts and Frazier admits that at the time of the accident he was employed by H & P and was in the process of hauling a load of sand from a local sand and gravel pit. This evidence is sufficient to establish that at the time of the accident Frazier was within the scope of his employment and was acting within the line of his duties. Defendant H & P presented no evidence to contradict this finding. Thus, the court finds that based on the principle of respondeat superior, H & P is liable for Frazier's negligent conduct in the train accident.

Thus, for the foregoing reasons, summary judgment is due to be **GRANTED** to Amtrak

against Frazier and H & P as to liability on Amtrak's claims of negligent operation of the tractor-trailer in Counts I and III of the Complaint.

### 2. Other Claims

Amtrak's Complaint also claims that Frazier wantonly operated the tractor-trailer (Count II), that H & P is liable for Frazier's wanton conduct (Count IV), that H & P negligently or wantonly entrusted the tractor-trailer to Frazier (Count V), and that H & P negligently or wantonly failed to maintain and/or repair the tractor-trailer (Count VI). However, while Amtrak did ask the Court to grant summary judgment to it on all counts of the Complaint, neither Amtrak nor the Defendants briefed or argued these claims in their submissions to the court. Finding that Amtrak failed to meet its burden as to these claims, summary judgment is due to be **DENIED** to Amtrak on all claims except its claims of negligent operation of the tractor-trailer.

### IV. Conclusion

For the reasons stated above, the Court finds that Plaintiff Amtrak's motion to strike and objection to portions of Frazier's affidavit is due to be GRANTED as to the following statements by Frazier: "It is my opinion that the accident was caused by the obstructed view available at the railroad crossing to the south and the manner in which the Amtrak train was being operated prior to and at the time of the accident;" "There was vegetation at the crossing which made it difficult to see down the entire length of the track;" that the train was traveling "at an extremely high rate of speed;" and "It is my understanding that there have been other accidents or near-misses at this crossing." Accordingly, the objection is due to be **SUSTAINED** as to these statements. The motion to strike and objection to portions of Frazier's affidavit is due to **DENIED** as to the following statement by Frazier: "As my tractor-trailer began to cross the tracks, I heard a train horn and saw a train approach from my left...." Accordingly, the objection is due to be **OVERRULED** as to this statement.

**1570**

Furthermore, the court finds that Plaintiff Amtrak's motion for summary judgment is due to be **GRANTED** as to all of Defendant Frazier's counterclaims—that Amtrak, and its employees, negligently or wantonly operated the train, that Amtrak negligently or wantonly maintained the railroad crossing grade and the surrounding area thereby creating or allowing an unsafe condition, an obstructed vision of the track due to vegetation, and inadequate safety and warning devices. The Court further finds that Plaintiff Amtrak's motion for summary judgment is due to be **GRANTED** as to liability on the Plaintiff's claims against Frazier and H & P of negligent operation of the tractor-trailer. Said motion is due to be **DENIED** as to the remainder of Plaintiff's claims—that Frazier wantonly operated the tractor-trailer, that H & P is liable for Frazier's wanton conduct, that H & P negligently or wantonly entrusted the tractor-trailer to Frazier, and that H & P negligently or wantonly failed to maintain and/or repair the tractor-trailer. A separate order and judgment will be entered in accordance with this memorandum opinion.

### ORDER

In accordance with the Opinion entered in the above-styled cause on this date, it is ORDERED, ADJUDGED, AND DECREED by this Court:

1. That the Motion to Strike and Objection to the Affidavit of Tony Ray Frazier filed herein August 30, 1996, by the Plaintiff be, and the same is hereby, GRANTED as to the following statements and that such statements be STRICKEN from Frazier's affidavit: "It is my opinion that the accident was caused by the obstructed view available at the railroad crossing to the south and the manner in which the Amtrak train was being operated prior to and at the time of the accident;" "There was vegetation at the crossing which made it difficult to see down the entire length of the track;" that the train was traveling "at an extremely high rate of speed;" and "It is my understanding that there have been other accidents or near-misses at this crossing." Accordingly, the objection is hereby SUSTAINED as to these statements by Frazier.

2. That the Motion to Strike and Objection to the Affidavit of Tony Ray Frazier filed herein August 30, 1996, by the Plaintiff be, and the same is hereby, DENIED as to the following statement: "As my tractor-trailer began to cross the tracks, I heard a train horn and saw a train approach from my left...." Accordingly, the objection is hereby OVERRULED as to this statement.

3. That the Plaintiff's Motion for Summary Judgment filed herein August 5, 1996, be, and the same is hereby, GRANTED as to all of Defendant Frazier's counterclaims: that Amtrak, and its employees, negligently or wantonly operated the train, that Amtrak negligently or wantonly maintained the railroad crossing grade and the surrounding area thereby creating or allowing an unsafe condition, an obstructed vision of the track due to vegetation, and inadequate safety and warning devices.

4. That the Plaintiff's Motion for Summary Judgment filed herein August 5, 1996, be, and the same is hereby, GRANTED as to liability on the Plaintiff's claims against Frazier and H & P of negligent operation of the tractor-trailer.

5. That the Plaintiff's Motion for Summary Judgment filed herein August 5, 1996, be, and the same is hereby, DENIED as to the remainder of Plaintiff's claims: that Frazier wantonly operated the tractor-trailer, that H & P is liable for Frazier's wanton conduct, that H & P negligently or wantonly entrusted the tractor-trailer to Frazier, and that H & P negligently or wantonly failed to maintain and/or repair the tractor-trailer.

6. That Defendant Frazier ("Counterclaimant") take nothing by his Counterclaim.